*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 19**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

GEORGE WAYNE RING,
*Appellant.*

No. 20150526
Filed May 25, 2018

On Direct Appeal

Fourth District, Nephi
The Honorable Jennifer A. Brown
No. 141600067

Attorneys:

Sean D. Reyes, Att'y Gen., Jeffrey D, Mann, Asst. Solic. Gen.,
Salt Lake City, for appellee

Nathan Phelps, Sandy, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and
JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1   George Ring was convicted of raping a three-year-old girl while she was playing in his girlfriend's apartment. Mr. Ring now appeals this conviction for three reasons. First, he claims that the district court erred by using each of the factors we previously

articulated in *State v. Shickles*[1] (*Shickles* factors) to determine the admissibility of his previous acts of child molestation. Second, he argues that even if the district court used the correct legal test, it nevertheless abused its discretion by admitting those previous acts of child molestation. Finally, he asserts an ineffective assistance of counsel claim based on several alleged deficiencies in his trial counsel's representation. Each of Mr. Ring's claims fails.

¶2    As an initial matter, we decline to consider whether the district court erred in relying upon each of the *Shickles* factors, because our review of this claim is precluded by the invited error doctrine. We do, however, address Mr. Ring's two remaining claims. First, we hold that the district court did not err in admitting evidence of Mr. Ring's prior acts of child molestation, because this evidence was admissible under rules 403 and 404(c) of the Utah Rules of Evidence. Second, we hold that Mr. Ring's ineffective assistance of counsel claim fails because he did not show that any of the alleged deficiencies constituted deficient performance and resulted in prejudice.

## Background

¶3    Three-year-old H.F. was playing with neighborhood friends at the apartment complex where she lived with her mother. Initially, Nancy Allred—the mother of one of H.F.'s friends—looked after the children. But when Ms. Allred went to church, she left the children alone with her boyfriend, George Ring. Although the children began by playing outside, when H.F.'s mother checked on H.F., she found her in Ms. Allred's apartment playing video games with Mr. Ring. A few hours later, H.F. told her mother, without any prompting, that "Uncle Jerry touched her pee pee." She also told her mother that "Uncle Jerry" lived with Ms. Allred. From this, her mother understood "Uncle Jerry" to be Mr. Ring. H.F.'s mother immediately reported the incident to the police.

¶4    A few days later, H.F. was interviewed at the Children's Justice Center (CJC) by case worker Erica Wankier. The interview was recorded. In the interview, H.F. again said that "Uncle Jerry" touched her "pee pee," indicating her vagina. She explained that this had happened in Ms. Allred's bedroom. According to H.F., "Uncle

---

[1] 760 P.2d 291 (Utah 1988), *abrogated on other grounds by State v. Doporto*, 935 P.2d 484 (Utah 1997).

Jerry" had pulled her pants down and touched her vagina with his "tail." She identified a man's "tail" on an anatomy chart as a penis. She said that his "tail" touched her "in" her "pee pee" while he lay on top of her on Ms. Allred's bed.

¶5 In the course of their investigation, police learned that Mr. Ring lived with Ms. Allred. They also learned that Mr. Ring was required to register as a sex offender—due to two previous convictions for child sex crimes—but that he had not registered in Utah. Based on this information, the State charged Mr. Ring with rape of a child and failure to register as a sex offender.

*Mr. Ring's Prior Acts of Child Molestation*

¶6 About four months before trial, Mr. Ring filed a motion requesting an evidentiary hearing in anticipation of the State seeking to admit evidence of his prior acts of child molestation under rule 404(c) of the Utah Rules of Evidence. In his motion, Mr. Ring referred the court to the *Shickles* factors and emphasized the "need for examination of the evidence to determine the answer to the threshold questions of admissibility set forth in *Shickles*."

¶7 Shortly thereafter, the State filed a motion *in limine* seeking to admit evidence of two cases of prior child molestation by Mr. Ring. The first case included two incidents in 1994 in which Mr. Ring molested a six-year-old boy (M.F.). One incident—which resulted in a rape conviction—occurred behind a haystack (haystack incident), and the other incident—which was not disclosed until a few years later and, consequently, did not lead to a criminal conviction—occurred at Mr. Ring's mother's house while he was playing video games with M.F. (video game incident). The second case involved a single incident three years later. In that case, Mr. Ring pled guilty to sexually assaulting a five-year-old girl (S.J.) by "humping" her and touching her genitals while they were watching television. The State relied on the *Shickles* factors in its motion to argue that "the prior instances of abuse pass the scrutiny of the 403 analysis."

¶8 The day before trial, the district court held an evidentiary hearing to determine the admissibility of Mr. Ring's prior acts of child molestation under rule 404(c), as well as the admissibility of H.F.'s recorded CJC interview. At the hearing, the State called M.F. and his father, and S.J. and her mother to testify about Mr. Ring's prior acts of child molestation. In addition to the haystack incident, M.F. testified about the video game incident. According to M.F., the video game incident occurred when Mr. Ring promised the six-year-old M.F. that he could only play video games if he did Mr.

Ring a favor. Mr. Ring then led him across the hall to Mr. Ring's mother's room where Mr. Ring raped him.

¶9    After the witnesses' testimony, the district court heard argument from the State and Mr. Ring. Both parties relied on each of the *Shickles* factors during their arguments. The district court then granted the State's "motion to admit the evidence of similar crimes."

*H.F.'s CJC Interview*

¶10    Another pretrial issue decided by the district court was the admissibility of a video recording of H.F.'s CJC interview. Months before trial, a preliminary hearing had been held to determine whether the State had probable cause to charge Mr. Ring for the crimes in this case. At this preliminary hearing, the State filed a stipulated motion to admit the video recording of the CJC interview at the preliminary hearing pursuant to rule 1102(b)(7) of the Utah Rules of Evidence and rule 15.5 of the Utah Rules of Criminal Procedure. Although H.F. was available to testify at the preliminary hearing, Mr. Ring declined to cross-examine her. As the trial approached, the State filed another motion to admit the recording of the CJC interview at trial pursuant to rule 15.5, and to allow H.F. to testify in the judge's chambers outside of Mr. Ring's presence.

¶11 The district court considered the State's motion at an evidentiary hearing held one day before trial. After finding that all conditions of rule 15.5 had been met, the court ruled that the CJC interview was admissible. Mr. Ring did not object. Additionally, the parties stipulated to H.F. testifying in the judge's chambers, with her testimony live-streamed to the jury in the courtroom.

¶12 At trial, the now four-year-old H.F. was present to give testimony in the judge's chambers in the presence of the judge, prosecutor, defense counsel, court clerk, and a victim advocate. The State questioned H.F. and defense counsel cross-examined her, but she had limited focus and would only answer "I don't know" when asked about "Uncle Jerry."

¶13    After H.F.'s testimony, Ms. Wankier testified about her CJC interview with H.F. The prosecution then played the recording of the CJC interview, with no objection from defense counsel.

¶14    The jury convicted Mr. Ring of rape of a child and failure to register as a sex offender, and Mr. Ring timely appealed the rape conviction. We have jurisdiction under section 78A-3-102(3)(i) of the Utah Code.

**Standard of Review**

¶15 Mr. Ring raises three issues on appeal. We consider each issue under a different standard of review.

¶16 First, Mr. Ring challenges the district court's use of each of the *Shickles* factors in considering the admissibility of evidence of Mr. Ring's prior acts of child molestation. This issue was not preserved and so would ordinarily be reviewed under a plain error standard.[2] But in this case we decline to conduct a plain error review, because the district court's use of the *Shickles* factors was invited error.

¶17 Next, Mr. Ring challenges the district court's admission of evidence of his prior acts of child molestation. We review the district court's decision under an abuse of discretion standard.[3] A district court's "decision to admit or exclude evidence" is only an abuse of discretion if it "is beyond the limits of reasonability."[4]

¶18 Finally, Mr. Ring argues that his trial counsel was ineffective in a number of respects. "A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law that [we] review[] for correctness."[5]

**Analysis**

**I. Because Mr. Ring Invited the District Court's Error by Urging the Court to Apply Each of the *Shickles* Factors, We Decline to Evaluate His Claim Under the Plain Error Standard**

¶19 Mr. Ring argues that the district court "erred in relying exclusively on the *Shickles* factors" when it considered the admissibility of evidence of Mr. Ring's prior acts of child molestation under rules 403 and 404(c) of the Utah Rules of Evidence. Because Mr. Ring's argument fails under the invited error doctrine, we decline to consider it.

---

[2] *State v. Moa*, 2012 UT 28, ¶ 24, 282 P.3d 985.

[3] *State v. Lowther*, 2017 UT 34, ¶ 17, 398 P.3d 1032.

[4] *Id*. (citation omitted).

[5] *State v. Lucero*, 2014 UT 15, ¶ 11, 328 P.3d 841 (citation omitted) (internal quotation marks omitted), *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016.

¶20 Under the invited error doctrine, we decline "to engage in plain error review when counsel made an affirmative statement that led the court to commit the error."[6] As we have previously noted, the invited error doctrine serves three important purposes. First, it "discourag[es] parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal."[7] Second, "it encourages counsel to 'actively participate in all proceedings and to raise any possible error at the time of its occurrence.'"[8] Finally, it "fortifies our long-established policy that the [district] court should have the first opportunity to address a claim of error."[9] For these reasons, we employ the invited error doctrine where a complaining party made affirmative statements to the district court that would have led the court to commit the error complained of. We hold that Mr. Ring affirmatively invited the district court to apply each of the *Shickles* factors in this case.

¶21 In *State v. Shickles*,[10] we established factors for determining whether evidence of prior crimes should be admitted under rules 403 and 404(b). From *Shickles* until our decision in *State v. Lucero*[11] nearly thirty years later, courts routinely relied on the *Shickles* factors when deciding whether to admit evidence under rule 404(b) or 404(c). It wasn't until *Lucero* that we clarified that it is the language of rule 403, and not the *Shickles* factors, that should govern the admissibility of rule 404(b) evidence. Specifically, we explained that "while some of [the *Shickles*] factors may be helpful in assessing the probative value of the evidence in one context, they may not be helpful in another."[12] We therefore concluded that it was "unnecessary for courts to evaluate each and every [*Shickles*] factor

---

[6] *State v. Moa*, 2012 UT 28, ¶ 24, 282 P.3d 985.

[7] *Id*. ¶ 25 (alteration in original) (citation omitted).

[8] *Id*. (citation omitted).

[9] *Id*. (alteration in original) (citation omitted).

[10] 760 P.2d 291 (Utah 1988), *abrogated on other grounds by State v. Doporto*, 935 P.2d 484 (Utah 1997).

[11] 2014 UT 15, 328 P.3d 841, *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016.

[12] *Id*. ¶ 32.

and balance them together in making their assessment" under rule 404(b).[13]

¶22 We discussed the *Shickles* factors again—in the context of rule 404(c)—the following year in *State v. Cuttler*.[14] In *Cuttler*, we reaffirmed *Lucero*'s holding that it is "'unnecessary for courts to evaluate each and every [*Shickles*] factor' in every context,"[15] and we further explained that in some contexts "it may be inappropriate for a district court to consider some of the *Shickles* factors."[16] We also held that it is always inappropriate for district courts to consider the "overmastering hostility" factor set out in *Shickles*.[17]

¶23 After our decisions in *Lucero* and *Cuttler*, it is clear that a proper rule 403 analysis for rule 404(b) or 404(c) evidence requires a district court to look first, and primarily, to the language of rule 403. Under that language a court must determine whether the probative value of the evidence is substantially outweighed by its prejudicial effect. The analysis may stop there. But to the extent the court finds it helpful to consider a factor set forth in *Shickles*—or any other factor[18]—it may do so. It is always error, however, for a court to center its analysis on the *Shickles* factors, to consider itself obligated to use a particular factor or factors, or to rely inflexibly upon each *Shickles* factor.

¶24 Although the trial in this case was held before our decision in *Cuttler* made it clear that "*Lucero* and its logic" also applied to "determinations made under rule 404(c),"[19] Mr. Ring argues that the district court plainly erred by considering each *Shickles* factor.[20] But

---

[13] *Id.*

[14] 2015 UT 95, 367 P.3d 981.

[15] *Id.* ¶ 18 (alteration in original) (citation omitted).

[16] *Id.* ¶ 19.

[17] *Id.* ¶ 20.

[18] Both *Lucero* and *Cuttler* made it clear that courts are not limited to only considering the *Shickles* factors. Indeed, courts may consider any factor that they deem appropriate in a rule 403 analysis. *See Cuttler*, 2015 UT 95, ¶ 18; *Lucero*, 2014 UT 15, ¶ 31.

[19] 2015 UT 95, ¶ 18.

[20] Although we decline to review the district court's use of the *Shickles* factors under a plain error standard, we do note that the

(Continued)

this argument fails because he repeatedly invited the district court to use each *Shickles* factor to determine the admissibility of his prior acts of child molestation. He first did this in a pretrial motion for a rule 404(c) hearing, where he introduced each *Shickles* factor and stated that there was a need for a hearing for an "examination of the evidence to determine the answer to the threshold questions of admissibility set forth in *Shickles*."

¶25 He invited the district court to apply each of the *Shickles* factors again at the hearing held on his rule 404(c) motion. There, and after the State argued using each of the *Shickles* factors, Mr. Ring's counsel stated "[counsel for the State] is correct that the controlling case law, the vehicle provided to us by the appellate courts . . . is in fact set forth in *Shickles*." And although Mr. Ring's counsel reminded the district court that the proper analysis was ultimately a rule 403 determination, he qualified this by stating that "the [c]ourt can and must weigh each of the [*Shickles*] factors" while conducting its rule 403 analysis. Mr. Ring's counsel's actions are sufficient to trigger the invited error doctrine.

¶26 Mr. Ring argues, however, that the invited error doctrine does not apply to his claim because the State was the first party to introduce the *Shickles* factors when it filed its motion *in limine*. But he is wrong on this point. The record before us clearly shows that Mr. Ring filed his motion for a 404(c) hearing before the State filed its motion. Moreover, even if the State had been the first party to introduce the *Shickles* factors, the invited error doctrine would still apply to Mr. Ring's claim because the doctrine applies any time a complaining party "made an affirmative statement that led the court to commit the error" complained of.[21] By introducing each of the *Shickles* factors and then urging the district court to apply them in his motion and at the hearing, Mr. Ring clearly made affirmative statements inviting the court to incorrectly apply the *Shickles* factors. Because these affirmative statements are sufficient to trigger the invited error doctrine, we decline to address whether the district court's strict application of each of the *Shickles* factors constitutes plain error.

---

uncertain state of the law at the time of trial weighs against Mr. Ring's plain error claim.

[21] *Moa*, 2012 UT 28, ¶ 24.

## II. The District Court Did Not Abuse its Discretion by Admitting Evidence of Mr. Ring's Prior Acts of Child Molestation

¶27 Next, we consider Mr. Ring's argument that even if the district court had applied the correct legal test, it nevertheless abused its discretion by admitting evidence of his prior acts of child molestation. We consider this claim by analyzing the evidence under rules 404(c) and 403 of the Utah Rules of Evidence to determine whether the district court's ultimate decision to admit evidence of his previous acts was "beyond the limits of reasonability."[22] We hold that it was not.

¶28 In child molestation cases, rule 404(c) allows "the court [to] admit evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged."[23] But before the court admits such evidence, it must weigh the evidence's probative value against its potential for prejudice under rule 403. If the evidence's "probative value is substantially outweighed by a danger of . . . unfair prejudice," the evidence should be excluded.[24]

¶29 When a district court conducts a rule 403 analysis it has the "discretion to consider any relevant factors."[25] In this case the district court found that the alleged crime was sufficiently similar to Mr. Ring's prior acts of child molestation to warrant admission. Although the district court concluded this after incorrectly considering each *Shickles* factor, we believe the result would have been the same if the court had relied primarily on the text of rule 403.

¶30 Mr. Ring's prior acts were highly probative in this case because they were significantly similar as to the age of the victim, the setting, the opportunity, and Mr. Ring's modus operandi. These similarities suggest that he had the propensity to commit the alleged crime.[26] And although Mr. Ring argues that the probative value of

---

[22] *State v. Lowther*, 2017 UT 34, ¶ 17, 398 P.3d 1032 (citation omitted).

[23] UTAH R. EVID. 404(c)(1).

[24] *Id*. 403.

[25] *Lowther*, 2017 UT 34, ¶ 40.

[26] *See State v. Cuttler*, 2015 UT 95, ¶ 24, 367 P.3d 981 (explaining that prior incidents of child molestation were probative, and

(Continued)

the evidence was diminished by the amount of time between his prior acts and the crime against H.F., the passing of time, on its own, is not enough to rob 404(c) evidence of its probative value.[27]

¶31 Continuing our rule 403 analysis, we find that any potential for unfair prejudice does not substantially outweigh the probative value of Mr. Ring's prior acts. Mr. Ring argues that evidence of his prior acts is prejudicial in two respects. First, he asserts that the evidence at issue in this case was "extremely prejudicial" because "sex crimes involving a child" are certain to "inflame the jury." In other words, he argues that evidence of child sex crimes, which rule 404(c) has explicitly deemed admissible, is inadmissible under rule 403 because it is overly prejudicial. But this cannot be. Rule 404(c)'s only function is to admit evidence of prior child sex crimes. Therefore, ruling as Mr. Ring suggests would render rule 404(c) inoperative—an outcome we refuse to endorse.[28] Accordingly, we hold that the evidence's nature as a prior act of child molestation "is not a factor that weighs against the evidence's admissibility."[29]

¶32 Mr. Ring also argues that evidence of his prior acts was unfairly prejudicial because it could potentially give the jury incentive to punish him for his past crimes. He claims that there is a high likelihood of unfair prejudice in this case because his previous prison sentences were for relatively short periods of time, and consequently, evidence related to his prison sentences may have led the jury to conclude that he deserved additional prison time for his past convictions. Although it is possible that evidence of past crimes could unfairly prejudice a defendant in this way, we are not convinced that this evidence was likely to do so in this case. The State did not focus on the length of Mr. Ring's sentences nor did it ever suggest that the sentences were insufficient or that the jury should impose additional punishment for Mr. Ring's past crimes. In fact, during its closing argument, the State specifically instructed the jury not to do so. Based on these facts, we do not find that the

---

therefore admissible, because there were "significant similarities between the incidents").

[27] *See id.* ¶ 28.

[28] *Id.* ¶ 27 ("To give rule 404(c) purpose, evidence of the prior conviction by itself cannot be said to lead to unfair prejudice automatically.").

[29] *Id.* ¶ 26.

potential for unfair prejudice substantially outweighed the evidence's probative value.

¶33 Because the evidence of Mr. Ring's past acts of child molestation is admissible under rule 403, we hold that the district court did not abuse its discretion by admitting it.

### III. Mr. Ring Has Failed to Show that His Trial Counsel Was Ineffective

¶34 Finally, we turn to Mr. Ring's ineffective assistance of counsel claim. He grounds his claim on four alleged deficiencies in his trial counsel's representation: (1) failing to object to the district court's use of the *Shickles* factors, (2) failing to object to the introduction of evidence of the video game incident, (3) failing to object to the introduction of the victim's out-of-court testimony despite the fact that he was not provided an opportunity for cross-examination, and (4) failing to object to the presence of members of the group Bikers Against Child Abuse during trial. Because Mr. Ring failed to show that any of the alleged failures constituted deficient performance and resulted in prejudice, his ineffective assistance of counsel claim fails.

¶35 An ineffective assistance of counsel claim requires Mr. Ring to show that his "[trial] counsel's performance was deficient" and that "the deficient performance prejudiced the defense."[30] "To establish that counsel was deficient, [Mr. Ring] must overcome the strong presumption that counsel rendered constitutionally sufficient assistance, by showing that counsel's conduct 'fell below an objective standard of reasonableness' under prevailing professional norms."[31] In other words, Mr. Ring "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[32]

---

[30] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[31] *Lafferty v. State*, 2007 UT 73, ¶ 12, 175 P.3d 530 (citation omitted) (quoting *Strickland*, 466 U.S. at 688); *see also Harrington v. Richter*, 562 U.S. 86, 109 (2011) ("There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" (citation omitted)).

[32] *Strickland*, 466 U.S. at 689 (citation omitted); *but see Harrington*, 562 U.S. at 109 (explaining that "there is no expectation a competent counsel will be a flawless strategist or tactician, an attorney may not

(Continued)

¶36 If Mr. Ring establishes that trial counsel's representation is deficient, he must then show that the deficiency prejudiced his defense. To do this, he "must present sufficient evidence to support 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[33] This analysis is counterfactual. "To decide whether a trial affected by error is reasonably likely to have turned out differently we have to consider a hypothetical—an alternative universe in which the trial went off without the error."[34] If we conclude that the result would have been the same absent the error, no prejudice has occurred. We discuss each of Mr. Ring's counsel's alleged deficiencies separately.

*A. Trial counsel's alleged deficiency in failing to object to the district court's use of the* Shickles *factors did not prejudice Mr. Ring*

¶37 First we consider the failure of Mr. Ring's trial counsel to object to the district court's incorrect use of each of the *Shickles* factors. While it is doubtful that trial counsel's failure to object in this instance rises to the level of deficient representation,[35] we need not reach that question because a timely objection would not have

---

be faulted for reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities").

[33] *Archuleta v. Galetka*, 2011 UT 73, ¶ 40, 267 P.3d 232 (quoting *Strickland*, 466 U.S. at 694).

[34] *State v. Ellis*, 2018 UT 2, ¶ 42, --- P.3d ---.

[35] As we discussed in Part I of this opinion, trial counsel's failure to object to the use of each of the *Shickles* factors occurred after our decision in *State v. Lucero*, 2014 UT 15, 328 P.3d 841, *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016, but before our decision in *State v. Cuttler,* 2015 UT 95, 367 P.3d 981. *See supra* ¶¶ 21–24. Although *Lucero* made it clear that courts were not bound by the *Shickles* factors in the context of a rule 404(b) determination, it wasn't until *Cuttler* a year later that it became clear that "*Lucero* and its logic" also applied to "determinations made under rule 404(c)." *Cuttler*, 2015 UT 95, ¶ 18. This means that during the year between *Lucero* and *Cuttler* it was unclear whether courts should continue relying on the *Shickles* factors, as they had been doing for nearly thirty years, when making a rule 404(c) determination. For this reason, it is conceivable that a reasonable attorney in trial counsel's position would believe that the *Shickles* factors remained controlling law.

prevented evidence of Mr. Ring's prior acts of child molestation from being admitted. A timely objection to the district court's use of the *Shickles* factors would have led the district court to conduct a proper rule 403 analysis. And, as we have already explained, under such an analysis, evidence of Mr. Ring's prior acts of child molestation would have been admissible.[36] So while trial counsel's failure to object contributed to the district court's use of an incorrect legal standard, it ultimately did not prejudice Mr. Ring's defense.

*B. Trial counsel's alleged deficiency in failing to object to the introduction of evidence of the video game incident did not prejudice Mr. Ring*

¶38 Mr. Ring likewise argues that his trial counsel was ineffective for failing to object to the admission of M.F.'s testimony regarding the video game incident. M.F., one of Mr. Ring's former victims, testified that Mr. Ring sexually molested him on two separate instances. One instance—the haystack incident—was immediately discovered by M.F.'s family and resulted in Mr. Ring's conviction for rape of a child. But the second instance—the video game incident—was not disclosed until years later and, consequently, did not lead to a criminal conviction. Although the video game incident was referenced in the State's motion *in limine*, and was discussed at length during the pretrial hearing, Mr. Ring argues that the district court never affirmatively ruled to admit evidence of that incident.[37] Mr. Ring now argues that trial counsel was ineffective for failing to object to this evidence's introduction at trial. But because the introduction of evidence of the video game incident did not sufficiently prejudice Mr. Ring's case, we conclude that his trial counsel's failure to object in this instance does not provide the basis for a successful ineffective assistance of counsel claim.

¶39 The introduction of the video game incident was not prejudicial because it was only one of three similar incidents admitted to show that Mr. Ring had the propensity to commit the crime in this case. Because the other two incidents would have effectively established this propensity in the absence of the video

---

[36] *See supra* Part II.

[37] In the record it is unclear whether the district court's ruling to admit evidence of Mr. Ring's molestation of M.F. included the video game incident.

game incident, the admission of the video game incident did not significantly harm Mr. Ring's defense.

¶40 At trial, the State presented four witnesses—M.F. and his father, and S.J. and her mother—who testified regarding the circumstances surrounding Mr. Ring's prior convictions for child molestation. According to the testimony of all four witnesses, the opportunity to molest his victims arose while Mr. Ring was playing with the younger children of close friends or family members. The haystack incident occurred while he and M.F. were outside together playing with rabbits. And the incident with S.J. occurred while he and S.J. were watching television together.

¶41 While M.F. also discussed the video game incident during his testimony, his account of that incident was substantially similar to the first two instances of child molestation. According to M.F., he was watching Mr. Ring play video games when Mr. Ring promised to let him play if he did Mr. Ring a favor. Mr. Ring then led M.F. to a bedroom across the hallway where Mr. Ring raped him. The State used evidence of all three of these incidents to establish Mr. Ring's pattern for molesting children.

¶42 Mr. Ring contends that the admission of the video game incident prejudiced him because he had been playing video games with H.F. on the day the alleged incident took place. According to Mr. Ring, the State's emphasis on the video game incident during closing argument was harmful because it showed that he used video games as a technique to draw kids in. But because the other two incidents had already established his pattern for using play to lure children, the video game incident was nonessential to the State's case. Stated differently, even if trial counsel had objected and the objection had resulted in the exclusion of the video game incident, the State could have made essentially the same closing argument that it did—Mr. Ring uses recreational activities to lure children to him. While the video game incident may have provided the State with a convenient narrative theme, we are not convinced that excluding it would have affected the outcome of the trial, and so we hold that trial counsel's failure to object did not unduly prejudice Mr. Ring.

*C. Trial counsel's failure to object to the admission of the*
*CJC interview was not deficient*

¶43 Similarly, Mr. Ring argues that counsel was ineffective for failing to object to the admission of the video recording of H.F.'s CJC interview. But this claim fails because under the prevailing law at the

time of trial, trial counsel could have reasonably believed that an objection was futile.[38]

¶44 The district court admitted the video of the CJC interview under rule 15.5 of the Utah Rules of Criminal Procedure. The rule provides that in cases involving "a sexual offense against a child, the oral statement of a victim or other witness younger than 14 years of age . . . [is] admissible as evidence in any court proceeding," provided several requirements are met.[39] Specifically, a victim's prior recorded statement is not admissible under rule 15.5 unless the victim is made available "to testify and to be cross-examined at trial," or the victim is "unavailable to testify at trial" but the defendant had previously been given an opportunity to cross-examine the victim concerning the recorded statement.[40] Mr. Ring argues that because H.F. was not available to testify and to be cross-examined at trial, his counsel should have objected to the admission of the CJC interview on the grounds that rule 15.5 was not satisfied and it would violate his Sixth Amendment right to confrontation.[41]

¶45 Mr. Ring maintains that H.F. was unavailable for cross-examination for two reasons. First, he contends that because H.F. was "incapable of answering questions," she was effectively unavailable for cross-examination. The second, more troubling reason Mr. Ring puts forth is that the district court failed to administer an oath to H.F. at trial.[42] While the failure to administer

---

[38] *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

[39] UTAH R. CRIM. P. 15.5(a).

[40] *Id*. 15.5(a)(1).

[41] The Sixth Amendment's Confrontation Clause precludes the admission of out-of-court testimony unless the defendant is given an opportunity to cross-examine the witness who offered the testimony. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

[42] "Having a witness under oath facilitates cross-examination, which is part of the constitutional right to confront one's accusers." *United States v. Babul*, 476 F.3d 498, 501 (7th Cir. 2007). Although the right to place a witness under oath, like the right to cross-examine a witness, may be waived by a defendant, *see id.*, absent an affirmative

(Continued)

an oath, as well as H.F.'s unresponsive testimony, may have caused H.F.'s trial testimony to fall short of the protections guaranteed Mr. Ring by rule 15.5 and the Confrontation Clause, we need not reach that question in this case. This is because Mr. Ring was previously afforded an opportunity to cross-examine H.F. when the State introduced the recorded CJC interview at a preliminary hearing. For this reason, trial counsel could have reasonably understood that any objection to the CJC interview's admission would have been futile.

¶46 Mr. Ring relies on our recent ruling in *State v. Goins*[43] to argue that the opportunity to cross-examine H.F. at the preliminary hearing was insufficient to satisfy the requirements of rule 15.5 and the Confrontation Clause. In *Goins*, we clarified that in most cases defendants do not have the same *motive* to cross-examine a witness as they do at trial.[44] But our decision in *Goins* dealt specifically with the requirements of rule 804 of the Utah Rules of Evidence,[45] and so we did not address whether a preliminary hearing affords defendants a sufficient opportunity to cross-examine a witness under rule 15.5 or the Confrontation Clause. Although Mr. Ring would have us answer this question now, we decline to do so because Mr. Ring's claim fails regardless of how this question is ultimately answered. This is so because we are reviewing his claim through an ineffective assistance of counsel lens.

¶47 When presented with an ineffective assistance of counsel claim we first determine whether trial counsel's failure to object to

---

waiver, the lack of an oath may deprive the defendant of a key benefit of the Confrontation Clause. *California v. Green*, 399 U.S. 149, 158 (1970) (explaining that one of the purposes of the Confrontation Clause is that it ensures that "the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury").

[43] 2017 UT 61, --- P.3d ---.

[44] *Id.* ¶ 34. This is so, we explained, because a 1994 amendment to article I, section 12 of the Utah Constitution limited the purpose of preliminary hearings to a determination that probable cause exists. *Id.* ¶ 31.

[45] *See* UTAH R. EVID. 804(b)(1) (deeming preliminary hearing testimony admissible against a defendant if defense counsel had both (1) an opportunity and (2) similar motive to develop the testimony at the preliminary hearing).

the admission of the CJC interview "'fell below an objective standard of reasonableness' under prevailing professional norms."[46] Mr. Ring's trial took place more than two years before our decision in *Goins*. Prior to *Goins*, courts followed our ruling in *State v. Brooks*,[47] where we held that defendants have "the same motive and interest" to cross-examine witnesses at a preliminary hearing as they do at trial.[48] Thus a reasonable attorney at the time of the trial would have understood that the previous opportunity to cross-examine H.F. at the preliminary hearing satisfied the requirements of rule 15.5 and the Confrontation Clause. Under these circumstances we cannot say that Mr. Ring's trial counsel was deficient in his performance for failing to object to the admission of the CJC interview.

*D. Trial counsel's alleged deficiency in failing to object to the presence of members of Bikers Against Child Abuse at trial was neither deficient nor prejudicial*

¶48 Finally, Mr. Ring argues that trial counsel was ineffective for not challenging the presence of members of Bikers Against Child Abuse during his trial. In order to make this argument, he previously asked that we remand to the district court to create a record supporting his claim under rule 23B of the Utah Rules of Appellate Procedure.

¶49 After reviewing the parties' briefs and hearing oral arguments on this issue, we denied the rule 23B motion without prejudice in a January 17, 2018 order. We denied the motion because it did not, as required by rule 23B, contain "a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective."[49] Although we denied the motion, we allowed Mr. Ring

---

[46] *Lafferty*, 2007 UT 73, ¶ 12 (citation omitted).

[47] 638 P.2d 537 (Utah 1981), *superseded by constitutional amendment as stated in Ellis*, 2018 UT 2; *see also Goins*, 2017 UT 61, ¶ 44, --- P.3d --- (explaining that courts had been following the rule set forth in *Brooks*).

[48] *Brooks*, 638 P.2d at 541.

[49] UTAH R. APP. P. 23B(a).

to file an amended rule 23B motion within thirty days, provided the amended motion complied with rule 23B.[50]

¶50 Because Mr. Ring failed to file an amended rule 23B motion within the allotted thirty days, we dismiss his motion with prejudice. Accordingly, his related ineffective assistance of counsel claim fails because there is no indication on record that his trial counsel's performance was defective or that he was prejudiced.

¶51 In sum, because Mr. Ring failed to show that any of the alleged failures of trial counsel constituted deficient performance and resulted in prejudice, his ineffective assistance of counsel claim fails.

## Conclusion

¶52 We decline to consider the district court's error in applying the *Shickles* factors because our review is precluded under the invited error doctrine. We also hold that the district court did not abuse its discretion in admitting evidence of Mr. Ring's prior acts of child molestation, because the prior acts were properly admissible under rules 404(c) and 403. And finally, we hold that Mr. Ring's ineffective assistance of counsel claim fails because he did not show that any of the alleged deficiencies constituted deficient performance and resulted in prejudice. We therefore affirm Mr. Ring's conviction.

---

[50] In doing so, we invited him to consider the test this court established in *State v. Griffin*, 2015 UT 18, --- P.3d ---. In that case, we set out four requirements for rule 23B motions. First, the motion must allege facts that are not already in the record. *Id.* ¶ 18. Second, the motion must allege nonspeculative facts that are supported by an accompanying affidavit. *Id.* ¶ 19. "[S]peculative allegations are those that have little basis in articulable facts but instead rest on generalized assertions." *Id.* Third, the allegations of fact must show deficient performance. *State v. Gunter*, 2013 UT App 140, ¶ 16, 304 P.3d 866. This means that "the nonspeculative facts must focus on why counsel's performance was deficient." *Id.* (citation omitted). Finally, the allegations of fact must demonstrate prejudice. *Id.* In other words, the allegations of fact must demonstrate "that the result would have been different had counsel's performance not been deficient." *Id.* (citation omitted).