2026 UT App 80

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
OSWALDO TORRES MARTINEZ,
Appellant.

Opinion
No. 20230326-CA
Filed May 14, 2026

Second District Court, Farmington Department
The Honorable David J. Williams
No. 211702044

Freyja Johnson and Rachel Phillips Ainscough,
Attorneys for Appellant

Derek E. Brown and Aubrey Bisbee,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion, in which JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      Oswaldo Torres Martinez was charged with four counts of aggravated sexual abuse of a child for abusing his daughter, Jane.[1] At trial, the district court allowed six witnesses to testify about prior unrelated cases in which Torres Martinez had pleaded guilty to sexual abuse of a minor. The jury convicted Torres Martinez on all four counts.

¶2      On appeal, Torres Martinez argues that the district court abused its discretion by allowing the witnesses to testify about the details underlying his prior convictions, rather than limiting the

---

1. We use pseudonyms for the victims in this case.

evidence to the facts in support of his guilty pleas, as he had requested. For the reasons discussed, we affirm Torres Martinez's convictions.

BACKGROUND

*The Abuse Allegations*

¶3    When Jane was twelve years old, she disclosed to a counselor that her father, Torres Martinez, had inappropriately touched her when she was around five or six years old. The counselor reported Jane's allegations to the police. Jane was interviewed at a Children's Justice Center (CJC) when she was thirteen years old.

¶4    During her CJC interview, Jane stated that Torres Martinez had touched her on three occasions. The first incident occurred while she was riding alone with Torres Martinez in his truck (the Truck Incident). The truck had a single bench seat in the front, and Jane was sitting next to the window while Torres Martinez drove. Torres Martinez asked Jane to sit closer to him, after which he pulled her over until they were sitting shoulder to shoulder. Torres Martinez proceeded to move his hand underneath Jane's shirt and rub her bare breast with his hand. He then moved his hand under Jane's pants and underwear and began rubbing her genitals in a side-to-side motion.

¶5    The second incident occurred while Jane and Torres Martinez were watching a movie together in the upstairs living room in their house (the Upstairs Incident). Jane and Torres Martinez were sitting on the floor next to each other with their backs against the couch. While the movie was playing, Torres Martinez pulled Jane onto his lap; a blanket was draped over their legs. Torres Martinez proceeded to put his hands under Jane's clothing, placing them first on her breasts and then on her

genitals. Although Jane's mother was sitting in the living room during the time that this touching was taking place, she was sitting some distance away, "not in the line of sight."

¶6 The third incident occurred during another movie night at their house (the Downstairs Incident). Jane's cousin, Megan, was having a sleepover with Jane. The two girls, Torres Martinez, and Jane's mother were downstairs in the basement living room of the house. Jane and Megan were sitting next to each other on one end of the couch, Torres Martinez was sitting on the other end of the couch, and Jane's mother was sitting in a chair near Torres Martinez. Torres Martinez asked Jane and Megan several times to move closer to him. Eventually, Torres Martinez pulled both girls onto his lap. He proceeded to put his hands under Jane's clothes, touching her breasts and then her genitals.

¶7 The State charged Torres Martinez with four counts of aggravated sexual abuse of a child for his abuse of Jane: one count each for touching Jane's genitals during the Truck Incident, the Downstairs Incident, and the Upstairs Incident; and one count for touching Jane's breasts during the Upstairs Incident.

*The Pretrial Proceedings*

¶8 Before trial, the State filed a notice, pursuant to rule 404(c) of the Utah Rules of Evidence, of its intent to introduce evidence that Torres Martinez had engaged in other acts of child molestation. Specifically, the State sought to admit evidence that Torres Martinez had abused three other child victims: Megan, Heidi, and Amanda. The notice listed descriptions of the acts the State anticipated introducing at trial, as well as the fact that Torres Martinez had pleaded guilty in each of the three associated criminal cases.

¶9 The district court held a hearing to address the State's rule 404(c) notice. Torres Martinez objected to allowing the State to call

each of the prior victims to testify along with the detectives who had investigated their respective cases, arguing that allowing all six witnesses to testify, and allowing testimony about the details of the previous incidents, would "overwhelm[] the facts of this case" and "inflame the jury and unfairly prejudice" Torres Martinez in violation of rule 403. To guard against this concern, Torres Martinez asked the court to admit the evidence, if at all, simply "through the lead detective and through certified dockets or statement[s] in advance of plea."

¶10 In response, the State asserted that the evidence had high probative value, noting that the victims in each case were similar in age, the victims had close relationships with Torres Martinez (either family members or close family friends), the abuse took place in similar locations (often the victim's house), and the type of abuse was also the same (touching of the breasts and genitals under the clothing, oftentimes while sitting on Torres Martinez's lap). The State also pointed out that all three of the prior cases had resulted in Torres Martinez pleading guilty. But the State opposed Torres Martinez's suggestion that the evidence should come in via only the limited avenues he had identified. It explained that "in order to meaningfully assess the appropriate weight" to afford the evidence, the jury would "need to hear and consider the details of the previous acts." Thus, the State asserted that "simply having a certified conviction of sexual battery" would not provide the jury with a full understanding of how to interpret the evidence.

¶11 After considering the parties' arguments, the district court ruled that the evidence fell within the ambit of rule 404(c) and that the victims and the detectives in each case could testify about the acts of child molestation involved in their respective case. The court explained that while there was "no doubt" that the evidence was prejudicial, it did not find that "the probative value of the evidence [was] outweighed by the danger of unfair prejudice." The court reasoned that rule 404(c) "doesn't seem to delineate" how many other acts can be admitted and that "the more [other

acts] you have, the more it could show propensity," which is "exactly what the rule is designed to allow." But the court warned the State that the witnesses would not be allowed to testify about details "showing things other than propensity to molest children."

*The Trial*

¶12   On the first day of trial, the State called four witnesses: Jane, Jane's aunt, an interviewer from the CJC, and the detective who had investigated Jane's case. Jane recounted the abuse as summarized above. Jane's aunt testified about living with Jane, including her observations of Jane after Torres Martinez attempted to speak with Jane on the phone.[2] The CJC interviewer explained how interviews are generally conducted but did not testify specifically about Jane's interview. And the detective testified that during his investigation of Jane's allegations against Torres Martinez, Torres Martinez "denied ever touching [Jane] in a sexual manner." The detective also testified that Torres Martinez had volunteered that he had inappropriately touched Megan but that after this admission he again "adamantly denied" ever touching Jane.

¶13   On the second day of trial, Torres Martinez renewed his objection to the State admitting testimony from six rule 404(c) witnesses. Although he conceded that the evidence was "certainly admissible for the purpose of propensity," he nevertheless took issue with "the manner in which" the evidence was being presented. He explained that given the "limited amount of evidence" (only four witnesses) in the State's case regarding the charged crimes, allowing the State to present six rule 404(c) witnesses would be "excessive" and a rule 403 violation.

---

2. During this time, Torres Martinez was incarcerated and not living with Jane.

¶14   The district court overruled Torres Martinez's objection. It concluded that, in this case, evidence of "[j]ust pleading guilty" was not enough and that the jury needed to hear "more facts associated with the prior acts, to allow [it] to make a determination of . . . whether [those acts do] show a propensity." And the court again rejected Torres Martinez's suggestion that the number of witnesses would be unduly prejudicial. In so doing, the court determined that the relevant analysis was not the "number of inciden[ts]" being presented but was instead whether "too much within an incident" was being disclosed. After the district court's ruling, the trial continued with the State calling each of the six propensity witnesses.

¶15   Megan testified that Torres Martinez abused her when she was around seven years old. She explained that one night, she was watching a movie in the basement of Torres Martinez's house with Jane, Torres Martinez, and Jane's mother. Megan stated that she and Jane were sitting on the couch with Torres Martinez. She said that at some point, Jane's mother left the room and Torres Martinez pulled both Megan and Jane onto his lap. Megan testified that Torres Martinez then moved his hand under her clothing and underwear and touched her "privates." Megan also observed Torres Martinez's hand "go under" Jane's pants.

¶16   Megan further testified that Torres Martinez touched her inappropriately two other times that night. She said one incident took place in a different room in the basement, where Torres Martinez put his penis in her mouth. The second incident occurred in Jane's bedroom. Megan stated that while she was sleeping next to Jane in Jane's bed, Torres Martinez came into the room, pulled down Megan's pants, and licked her "private areas, under the waist."

¶17   The detective who interviewed Torres Martinez as part of the investigation into Megan's allegations testified that Torres Martinez initially denied any inappropriate touching. But the

detective explained that as the interview progressed, Torres Martinez eventually admitted to performing oral sex on Megan, having her perform oral sex on him, and touching her vagina with his fingers. The detective also confirmed that Torres Martinez was charged for his abuse of Megan and that Torres Martinez pleaded guilty to the charges "fairly quickly."

¶18    Heidi testified that she did not know Jane, Megan, or Amanda. She stated that she had met Torres Martinez, who was friends with her oldest brother, while she was between the ages of five and nine years old. Heidi did not testify about Torres Martinez sexually abusing her. However, the detective assigned to investigate Heidi's allegations against Torres Martinez testified about the investigation. The detective stated that Torres Martinez had admitted to touching Heidi inappropriately while the two watched movies together. Torres Martinez told the detective that Heidi would lie on top of Torres Martinez's legs and he would rub her stomach until she fell asleep. Torres Martinez also claimed that he would "grab [Heidi] and place her on his lap," which would give him an erection, that "he would keep her on his lap because he could feel her through the clothing," and that he did this for sexual gratification. The detective affirmed that Torres Martinez was charged criminally for this behavior and that he pleaded guilty to the charges.

¶19    Amanda testified that she did not know Jane, Megan, or Heidi. Amanda's mother dated Torres Martinez when Amanda was around eleven years old. Amanda recounted that one night she was having difficulty sleeping so she climbed into bed with her mother and Torres Martinez. Amanda explained that Torres Martinez was initially on the "opposite" end of the bed from her but he switched places with her mother so that he was next to Amanda. Amanda stated that Torres Martinez then "grabbed between [her] legs." He also grabbed her breasts, put his hands in her pants, and put "his fingers under [her] butt." Amanda

testified that after this there were other occasions where Torres Martinez touched her breasts and vagina.

¶20    The detective who interviewed Torres Martinez in connection with Amanda's allegations testified that Torres Martinez denied touching Amanda inappropriately. But the detective acknowledged that charges were filed against Torres Martinez in Amanda's case and that Torres Martinez had pleaded guilty to the charges.

¶21    At the close of trial, the district court instructed the jury and the attorneys presented closing arguments. The jury thereafter found Torres Martinez guilty on all counts, and Torres Martinez now appeals.

## ISSUE AND STANDARD OF REVIEW

¶22    Torres Martinez argues that the district court abused its discretion under rule 403 of the Utah Rules of Evidence by allowing the State to admit testimony from six witnesses about the details of his prior convictions for child molestation rather than limiting the evidence to the facts in support of his guilty pleas. "We review a [district] court's evidentiary rulings for an abuse of discretion. A district court's decision to admit or exclude evidence is only an abuse of discretion if it is beyond the limits of reasonability." *State v. Garcia*, 2022 UT App 77, ¶ 25, 526 P.3d 1238 (quotation simplified).

## ANALYSIS

¶23    As a general rule, the Utah Rules of Evidence prohibit the admission of evidence of a person's prior bad acts "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). One exception to this general rule is rule 404(c), which

allows the court in a child-molestation case to admit "evidence that the defendant committed any other acts of child molestation" "to prove propensity to commit the crime charged." *Id.* R. 404(c)(2).

¶24 Although the rule 404(c) exception expressly permits the admission of evidence of "any other acts of child molestation," *see id.*, such evidence is admissible only if it satisfies rule 403's balancing test, *see State v. Fredrick*, 2019 UT App 152, ¶ 43, 450 P.3d 1154. That test requires the court to "weigh the evidence's probative value against its potential for prejudice." *State v. Ring*, 2018 UT 19, ¶ 28, 424 P.3d 845; *accord* Utah R. Evid. 403. "If the evidence's probative value is substantially outweighed by a danger of unfair prejudice, the evidence should be excluded." *Ring*, 2018 UT 19, ¶ 28 (quotation simplified). Evidence is *unfairly* prejudicial "only where the evidence has an undue tendency to suggest decision upon an improper basis." *State v. Green*, 2023 UT 10, ¶ 78, 532 P.3d 930 (quotation simplified).

¶25 In this case, Torres Martinez does not dispute that the witnesses' testimonies concerning other acts of molestation were proper rule 404(c) evidence. Instead, he contends that the district court abused its discretion by allowing the State to present testimony from six propensity witnesses, rather than limiting the State to the factual statements in support of Torres Martinez's guilty pleas. He argues that the live testimony did not satisfy the rule 403 balancing test because it had little probative value and any probative value was substantially outweighed by the risk of unfair prejudice. This argument is unavailing.[3]

---

3. The State argues that Torres Martinez's "claim fails at the start" because the three plea statements are not included in the record. *See* Utah R. App. P. 11(c)(2) (stating that "the appellant must include in the record a transcript of all evidence relevant" to any

(continued…)

¶26   First, the testimony was highly probative. "In considering whether a defendant sexually abused a child victim, a jury might find it extremely probative to learn that the same defendant sexually abused other children on previous occasions." *Fredrick*, 2019 UT App 152, ¶ 43; *see also id.* ¶ 45 ("[T]he propensity value of the evidence is precisely what makes rule 404(c) evidence so highly probative."). And "the more similar a previous act is to the act the defendant is accused of committing, the more commission of a previous act might suggest propensity." *State v. Modes*, 2020 UT App 136, ¶ 18, 475 P.3d 153. Torres Martinez's prior acts were highly probative of propensity in this case because they were similar to the charged abuse in that the victims were all young girls, Torres Martinez had a similar relationship with each of his victims, much of the abuse occurred in similar settings, and some of the types of abuse were the same. *See Ring*, 2018 UT 19, ¶ 30 ("[The defendant's] prior acts were highly probative in this case because they were significantly similar as to the age of the victim, the setting, the opportunity, and [the defendant's] modus operandi.").

¶27   Second, the high probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Torres Martinez contends that the evidence encouraged the jury to convict him "out of a fear that he would reoffend in the future, in accord with his propensity." But "propensity does not constitute unfair prejudice" in the rule 404(c) context, "because the defendant's propensity to molest children is *the reason for*

_____

finding or conclusion that the appellant intends to challenge on appeal). But even without these statements in the record, we can readily determine that Torres Martinez's claim would still fail on the merits because he has not pointed to anything showing that the witnesses' live testimonies posed a risk of unfair prejudice. We therefore proceed to address Torres Martinez's claim on the merits.

*admission* under rule 404(c)." *State v. Garcia*, 2022 UT App 77, ¶ 31, 526 P.3d 1238 (emphasis added) (quotation simplified). Thus, to demonstrate unfair prejudice, "the defendant must be able to show something *other than* the propensity nature of the evidence that weighs on the prejudice side of the equation." *Fredrick*, 2019 UT App 152, ¶ 46; *see also Modes*, 2020 UT App 136, ¶ 21 ("To establish prejudice in a rule 404(c) context, a defendant would have to show that the evidence demonstrates something apart from the act of sexual molestation of a child . . . ." (quotation simplified)).

¶28　Citing *State v. Cuttler*, 2015 UT 95, 367 P.3d 981, Torres Martinez suggests that the amount of propensity evidence relative to the State's other evidence created a risk of unfair prejudice. While the supreme court in *Cuttler* did caution that "unnecessary and emotionally charged details about the [prior] abuse, such as other accompanying physical abuse," might render such evidence unduly prejudicial, *id.* ¶ 27, the court did not suggest that the prejudice inquiry should turn on the number of prior acts introduced. Rather, the court focused on reducing prejudice by withholding "inflammatory details beyond what is necessary or appropriate for [the jury] to consider when drawing [a] propensity inference." *Id.* Other than complaining about the number of witnesses that testified, Torres Martinez has not pointed to any specific details from the testimony that constitute the type of "inflammatory details" our supreme court warned may be inappropriate. *See id.*[4]

---

4. Aside from prejudice, rule 404(c) evidence may fail the rule 403 balancing test if it is needlessly cumulative. *See* Utah R. Evid. 403 (stating that evidence may be excluded "if its probative value is substantially outweighed" by the danger of "needlessly presenting cumulative evidence"); *see also State v. Christian*, 2025 UT App 112, ¶ 34, 575 P.3d 293 (explaining that "*separate from* the

(continued…)

CONCLUSION

¶29    The district court did not abuse its discretion in admitting testimony from six rule 404(c) witnesses. The evidence was highly probative, and Torres Martinez has not pointed to anything other than the propensity nature of the evidence that would render the evidence unfairly prejudicial.

¶30    Affirmed.

———————

danger of unfair prejudice," evidence may be inadmissible if it is "needlessly cumulative" (emphasis added)), *cert. denied*, 578 P.3d 751 (Utah 2025). But Torres Martinez has not argued that the evidence in this case should have been excluded as needlessly cumulative. Rather, his argument is that unfair prejudice arose from the number of witnesses. In any event, even if the evidence could be considered cumulative in some regards, we cannot say that it was *needlessly* cumulative. The State called two witnesses—the victim and the investigating detective—with regard to each of the three prior acts of child molestation. As the district court recognized, "[T]he more [other acts] you have, the more it could show propensity. And that's exactly what [rule 404(c)] is designed to allow."