*This opinion is subject to revision before*
*publication in the Pacific Reporter*

**2015 UT 95**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

JAMES ROBERT CUTTLER,
*Respondent.*

No. 20130919
Filed December 24, 2015

Fourth District, Provo Dep't
The Honorable Lynn W. Davis
No. 121402748

Attorneys:

Sean D. Reyes, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen.,
Salt Lake City, for petitioner

Aaron P. Dodd, Provo, for respondent

Kent R. Hart, Salt Lake City, for amicus
Utah Association of Criminal Defense Lawyers

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUSTICE DURHAM joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶ 1 The State charged the defendant, James Cuttler, with vaginally raping and orally and anally sodomizing his then seven-year-old daughter. To bolster its case, the State sought to introduce evidence pursuant to rule 404(c) of the Utah Rules of Evidence that in 1984 and 1985 Cuttler vaginally raped and orally and anally sodomized his then eight- and ten-year-old daughters, demonstrating "a propensity to commit the crime[s] charged."

UTAH R. EVID. 404(c)(1). Cuttler objected. He argued that such evidence was inadmissible under rule "404(c) because it [did] not establish [such] a propensity" and was also inadmissible under rule 403 because its probative value was "clearly outweighed by the danger of unfair prejudice." The district court took a middle tack. It reasoned that evidence of Cuttler's prior sexual abuse of his other daughters met the propensity standard for admission under rule 404(c) but did not pass rule 403 muster because the evidence presented a danger of unfair prejudice that substantially outweighed its probative value. Therefore, it ordered that the evidence "not be admitted." We granted an interlocutory appeal to review the district court's order.

¶ 2   Because the district court abused its discretion in two ways, we reverse. First, the district court applied an incorrect legal standard by requiring that the evidence of prior abuse "overcome" the "factors set forth in *State v. Shickles*[,] 760 P.2d 291 (Utah 1988)," in order to satisfy rule 403. As we explained in *State v. Lucero*, albeit in a slightly different context, "courts are bound by the text of rule 403, not the limited list of considerations outlined in *Shickles*." 2014 UT 15, ¶ 32, 328 P.3d 841. Thus, the governing legal standard for evaluating whether evidence satisfies rule 403 is the plain language of the rule, nothing more and nothing less. And while the district court's adherence in this case to the *Shickles* factors is understandable given our prior pronouncements on this subject, it nevertheless represents an application of the wrong legal standard and, therefore, an abuse of discretion. *See Johnson v. Johnson*, 2014 UT 21, ¶ 24, 330 P.3d 704 ("As such, the district court applied the wrong legal standard, and in so doing, abused its discretion.").[1]

---

[1] We are careful to say that the district court's systematic application of the *Shickles* factors in this case is understandable. Until this court's decision in *State v. Lucero*, 2014 UT 15, 328 P.3d 841, which postdates the ruling at issue here, this court encouraged district courts to gauge the *Shickles* factors in determining whether rule 404(b) evidence meets the requirements of rule 403. *See State v. Widdison*, 2001 UT 60, ¶ 50, 28 P.3d 1278. And the Advisory Committee Note to rule 404 suggests that the district courts follow the same course with respect to rule 404(c) evidence: "The court should consider the factors applicable as set

(cont.)

¶ 3     Second, the district court also abused its discretion in how it assessed the similarities between the evidence of prior abuse and the current alleged abuse, as well as the potential prejudice from, and time gap since, the evidence of prior abuse. As we explain below, and by way of example, under the district court's analysis the State would effectively be precluded from ever introducing proof that a grandfather charged with sexually molesting a granddaughter had previously sexually molested his daughters in the same manner and when they were the same age as the granddaughter. *See infra* ¶ 29. We will not handcuff the prosecution from presenting evidence of intergenerational sexual abuse in such a manner.

## BACKGROUND

¶ 4     K.C. was seven years old when she went to "her teacher and school principal" and told them that Cuttler, her father, had been sexually molesting her "for the last month." In subsequent interviews at the Utah County Children's Justice Center, K.C. alleged that when she goes to Cuttler's "house on the weekends" to visit him, "he locks the door . . . [and] takes off his pants" and her pants and puts his penis, which he nicknamed "his dolly," in her "mouth," "butt hole," and "pee pee."

¶ 5     According to K.C., whenever she would "play" with Cuttler's penis, it would get "stiff" and "hard" and would "stand[] straight up." K.C. also told the interviewer at the Children's Justice Center that sometimes "a puky liquid" would come out of his penis. She also described in detail for the interviewer where and how the alleged abuse took place. Finally, K.C. reported that Cuttler would tell her that if she ever told anyone about the abuse, "then they'll take—, then they call the

---

forth in *State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988) . . . ." However, even before *Lucero*, our appellate courts never required that courts strictly hew to all of the *Shickles* factors in a rule 403 analysis. *See State v. Allen*, 2005 UT 11, ¶¶ 25–26, 28, 108 P.3d 730 (rejecting an argument that because a district court did not explicitly consider the *Shickles* factors, it erred when it admitted prior bad acts evidence); *State v. Harter*, 2007 UT App 5, ¶ 30, 155 P.3d 116 ("The court need not identify each of the *Shickles* factors in its analysis as long as we can discern that it made a sufficient inquiry under rule 403.").

police and take me [Cuttler] away" and the only reminders of him that she would have would be the "things he's given me [K.C.] and pictures."

¶ 6    K.C.'s allegations bear a considerable similarity to the sexual abuse Cuttler inflicted on his daughters J.C. and W.C. years earlier in Hurleyville, New York. It is undisputed that in 1984 Cuttler grabbed J.C., who was nine to ten years old at the time, "by the nap[e] of the neck" and made her perform oral sex on him.[2] Afterwards, he twisted her arm behind her back and "inserted [his] penis in her rectum." Cuttler inflicted the same sexual abuse on W.C. in 1985 when W.C. was eight years old. Cuttler told the detective investigating his abuse back then that he also believed he had inserted his penis into the girls' vaginas. He further admitted that he had been sexually molesting at least J.C.—and perhaps both girls—for "more than a year." Cuttler referred to his penis by a nickname during this time period, too.

¶ 7    Based on K.C.'s report, the State charged Cuttler with two counts of rape of a child, two counts of sodomy upon a child, and two counts of aggravated sexual abuse of a child, all first-degree felonies. While he was being held in jail, Cuttler was allegedly recorded telling K.C. "that he was at the jail house, 'where you put me . . . by talking to the police,' and further told her that she won't ever see him again, . . . and that 'I told you to be quiet and not to talk about it.'" And Cuttler later allegedly told K.C. that he did not "understand why you would tell that."

¶ 8    Early on in this case, the State lodged a Notice of Intent to Introduce Evidence Pursuant to Utah Rules of Evidence 404(b) and 404(c). The notice asserted that Cuttler had "sexually abused his biological daughters, W.C. and J.C., on an ongoing basis at their home in Hurleyville, New York[,] on and before January 6, 1985." The district court refused to admit the proffered evidence under rule 404(b)(2) because it concluded that the evidence failed

---

[2] The record indicates Cuttler began molesting J.C. when she was nine years old and continued to molest her for "more than a year."

to satisfy the rule's requirements.[3] And while it was of the opinion that the evidence fell within the strictures of rule 404(c), the district court nevertheless declined to admit the proffered evidence under this rule because it felt, after applying the *Shickles* factors, "that the proffered evidence presents a danger of unfair prejudice which substantially outweighs the probative value of the evidence."

¶ 9    In response to the district court's decision, the State filed a petition for permission to file an interlocutory appeal, which we granted as to two issues. However, only the first issue presently concerns us. *See infra* ¶ 14. It asks, "Did the trial court apply the correct legal standard when weighing the probative value of rule 404(c) evidence (prior child molestation) against the risk of unfair prejudice under rule 403?" Our order granting the State permission to appeal also requested "that the parties address whether the factors for evaluating [r]ule 404(b), set forth in *State v. Shickles*, . . . should be reconsidered or revised."[4]

¶ 10    Prior to briefing, we handed down our decision in *State v. Lucero*, making plain that it is the language of rule 403 and not *Shickles* that governs whether a district court should exclude 404(b) evidence pursuant to rule 403. 2014 UT 15, ¶ 32, 328 P.3d 841. In recognition of this, both parties, as well as amicus curiae, the Utah Association of Criminal Defense Lawyers, focused, in part, on *Shickles*'s role in the 404(c) context.

¶ 11    We have jurisdiction of this interlocutory appeal under Utah Code section 78A-3-102(3)(h).

---

[3] Since the resolution of the rule 404(b) issue does not affect the outcome of this appeal, we decline to reach it in our analysis. *See infra* ¶ 14.

[4] While the first issue is phrased in terms of the application of "the correct legal standard," it is evident that the parties understood our grant to also encompass the issue of whether the district court properly applied the legal standard. The distinction in phraseology is important because it implicates the standard of review. *See infra* ¶ 12.

**STANDARD OF REVIEW**

¶ 12   We afford district courts "a great deal of discretion in determining whether to admit or exclude evidence" and will not overturn an evidentiary ruling absent an abuse of discretion. *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 14, 17 P.3d 1110. But whether the district "court applied the proper legal standard" in assessing the admissibility of that evidence is a question of law that we review for correctness. *Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177. And the admission or exclusion of evidence under the wrong legal standard constitutes an abuse of discretion. *Robinson v. Taylor*, 2015 UT 69, ¶¶ 8–21, 356 P.3d 1230; *State v. Larkin*, 443 S.W.3d 751, 807 (Tenn. Crim. App. 2013) ("We will find that a trial court abused its discretion in admitting or excluding evidence . . . when the trial court applied incorrect legal standards . . . ."). A trial court also abuses its discretion under rule 403 if its decision to admit or exclude evidence "is beyond the limits of reasonability." *State v. Williams*, 2014 UT App 198, ¶ 10, 333 P.3d 1287 (internal quotation marks omitted).

**ANALYSIS**

¶ 13   The State argues that the district court should have admitted "the prior child molestation evidence" under both rule 404(b) and rule 404(c). According to the State, it was entitled to use the evidence pursuant to rule 404(b) "to rebut a claim of fabrication, i.e., to prove the *actus reus* of the crime," and pursuant to rule 404(c) to show Cuttler's propensity to sexually abuse his daughters. The State further argued that rule 403 did not bar the prior molestation evidence as the evidence was "more probative than prejudicial." The district court determined that while the evidence "failed to meet the . . . requirements . . . to justify the admission . . . under [r]ule 404(b)," it did satisfy rule 404(c). Nonetheless, the district court excluded the evidence because it did not "overcome the hurdles presented by [r]ule 403 and the *Shickles* factors as required under the Advisory Committee Note attached to [r]ule 404(c)."

¶ 14   We are of the opinion that the district court abused its discretion in excluding the prior molestation evidence under rule 403. We are also of the opinion that this conclusion, combined with the district court's determination that the evidence satisfied rule 404(c), moots the need for us to examine the district court's exclusion of the evidence under rule 404(b). Therefore, we focus

our inquiry on the district court's decision to keep the evidence out based on rule 403.

## I. THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING THE EVIDENCE OF CUTTLER'S PRIOR SEXUAL ABUSE UNDER RULE 403

¶ 15 To be clear, the issue before us is not whether the evidence that Cuttler sexually abused his daughters in 1984 and 1985 is admissible under rule 404(c) "to prove [Cuttler's] propensity to commit the crime[s] charged in the present case." The district court found that it is, and that finding is not before us on appeal. Nor is the issue whether "prior child molestation evidence that is admissible under rule 404(c) is subject to rule 403." The State concedes that it is. "The real inquiry," to quote the State, "derives from the text of rule 403 itself" and is whether the evidence's "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." UTAH R. EVID. 403.

¶ 16 It is the State's position that the district court "applied an incorrect legal standard in weighing the probative value of the rule 404(c) evidence under rule 403," thereby abusing its discretion. More specifically, the State argues that the district court "went wrong" in applying all of the *Shickles* factors without regard to the "nature of the evidence and the totality of the circumstances in the individual case."[5] In the words of the State at oral argument, the district court "erroneously excluded the rule 404(c) evidence . . . , and it did so by rigidly applying the *Shickles* factors in its rule 403 analysis." The State further contends that, the standard aside, the district court misconstrued the factors.

---

[5] The *Shickles* factors are as follows:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988) (quoting E. CLEARY, MCCORMICK ON EVIDENCE § 190 (3d ed. 1984).

¶ 17 We agree. First, the district court employed an incorrect legal standard and, as a result, misapplied rule 403. And second, even if this were not the case, it is our considered decision that the district court's decision to exclude the evidence exceeded the bounds of reasonableness and constitutes an abuse of discretion.

¶ 18 With respect to the first assigned error—the use of the wrong legal standard—rule 403 instructs courts to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." While weighing the evidence under this rule, courts may consider many factors, including some of those we identified in *Shickles*. However, as we noted in *State v. Lucero*, in the context of rule 404(b), the *Shickles* factors should not limit the considerations of a court when making a determination of evidence's admissibility under rule 403. 2014 UT 15, ¶ 32, 328 P.3d 841. Instead, courts are "bound by the text of rule 403," and it is "unnecessary for courts to evaluate each and every [*Shickles*] factor" in every context. *Id.* Today, we make manifest *Lucero* and its logic to determinations made under rule 404(c) as well.

¶ 19 Again, this is not to say that the *Shickles* factors, taken individually, have no place in a rule 403 analysis. It may very well be appropriate, for example, for a district court to consider the similarities between the crimes in assessing probative value. And it may also be appropriate for a district court to take stock of the need for the evidence or the efficacy of alternative proof before deciding whether evidence should be excluded under rule 403 as cumulative or a waste of time. But it is not appropriate for a district court to moor its rule 403 analysis entirely and exclusively to all of the *Shickles* factors. In addition, it may be inappropriate for a district court to consider some of the *Shickles* factors in particular contexts. For example, it strikes us as inappropriate for a court to discuss the need for the evidence or the efficacy of alternative proof when the court is analyzing only whether that evidence is unfairly prejudicial.

¶ 20 Finally, it is inappropriate for a district court to ever consider whether evidence will lead a jury to "overmastering hostility." The language of rule 403 requires only that evidence not lead to unfair prejudice. Overmastering hostility is both a

stricter and looser metric by which to judge evidence under rule 403. Evidence may lead to prejudice in ways other than by rousing a jury to overmastering hostility. Also, overmastering hostility is much stronger language than the "unfair" language actually used in rule 403. Since the overmastering hostility factor under *Shickles* is at best judicial gloss and at worst a substitute test for evidence's admissibility under rule 403, we now make clear that it is inappropriate for a court to consider the overmastering hostility factor in a rule 403 analysis.[6]

¶ 21 Here, the district court relied exclusively on the *Shickles* factors when determining the admissibility of the previous child molestation evidence under rule 403. The district court required the evidence to "overcome the hurdles presented by [r]ule 403 *and* the *Shickles* factors." To this end, the district court proceeded to analyze the rule 403 "hurdles" solely within the context of the *Shickles* factors. And while admittedly understandable in light of some of our prior pronouncements, the district court's exclusive reliance on the *Shickles* factors represents the kind of formalistic analysis we expressed concern over in *Lucero* and does not give due consideration to the actual text of rule 403. 2014 UT 15, ¶ 32. This reflects an incorrect legal standard that constitutes an abuse of discretion. *Id.*

¶ 22 With respect to the second assigned error—the misapplication of the *Shickles* factors—we note several ways in which the district court improperly assessed the *Shickles* factors in determining whether the previous child molestation evidence was "substantially outweighed by a danger of . . . unfair prejudice." UTAH R. EVID. 403.[7]

---

[6] The problem with *Shickles* is that the factors were never tethered to the specific inquiries that rule 403 allows. This has resulted in courts sometimes asking the wrong questions in assessing whether evidence satisfies rule 403. A focus on the factors, as opposed to the language of rule 403, also increases the risk that courts will fail to ask the right questions, questions not found in *Shickles*, in assessing rule 404(b) and rule 404(c) evidence under rule 403.

[7] We recognize that under rule 403 a court also "may exclude relevant evidence if its probative value is substantially
(cont.)

¶ 23 The district court, pursuant to *Shickles*, considered the similarities between how Cuttler sexually abused J.C. and W.C. and the present allegations regarding K.C. The district court concluded that "the similarities between the cases are no more than arise in most, if not all, child sex abuse cases." Given the record on this matter, this conclusion is not reasonable.

¶ 24 It is evident that K.C.'s account of her abuse is considerably similar to the abuse suffered by J.C. and W.C. Furthermore, these similarities are not just attributable to the similarities observed among "most, if not all, child sex abuse cases" as the district court suggested. The unique similarities between the cases include: (1) the father-daughter relationship between Cuttler and J.C., W.C., and K.C.; (2) the gender and ages (nine, eight, and seven years, respectively) of the daughters; (3) Cuttler's alleged "oral sodomy, anal rape, and vaginal penetration" of each of the girls; (4) the prolonged time period over which the molestation occurred; and (5) Cuttler's use of a nickname for his penis. Moreover, the only difference considered by the district court—that Cuttler's abuse of J.C. and W.C. involved the use of force—was given too much weight and could have been attributed to the most recent victim being a compliant child. Thus, the force described in J.C.'s and W.C.'s abuse is not significant enough to outweigh the significant similarities between the incidents.[8]

---

outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The district court, however, focused only on the question of whether the probative value of the evidence of prior abuse substantially outweighed the danger of unfair prejudice. And while defense counsel briefly alluded to the evidence potentially causing "confusion of the issues" and "misleading the jury," her argument focused on the allegation of "severe prejudicial harm" to Cuttler.

[8] At oral argument, the State acknowledged that it did not intend to relate to the jury the acts of physical force Cuttler inflicted on J.C. and W.C. as part of the rule 404(c) evidence. And defense counsel conceded that absent those acts being communicated to the jury, there was no rule 403 issue. In light of these concessions, we bar the State, on remand, from relaying any

(cont.)

¶ 25   Other courts have found sufficient similarities to permit admission of such evidence in similar circumstances. In *United States v. Mann*, 193 F.3d 1172 (10th Cir. 1999), the circuit court permitted evidence of a previous child molestation offense under rules 403 and 414 of the Federal Rules of Evidence. Federal rule 403 has the same standard of admission as Utah's rule 403; evidence is permitted so long as "its probative value is [not] substantially outweighed by the danger of unfair prejudice." *Id.* at 1173. In *Mann*, the similarities between the molestation incidents were very similar to those found here:

> (1) [the victims were] all defendant's great nieces; (2) all three of the girls lived on or regularly came within close physical proximity to defendant's property during the time of the alleged abuse; (3) defendant allegedly began to abuse each of the girls when they were approximately the same age; and (4) defendant allegedly had vaginal intercourse with each child.

*Id.* at 1174. As such, the evidence of the previous child sex abuse was admitted at the defendant's trial. Likewise, we are of the opinion that the evidence of Cuttler's prior sexual abuse of J.C. and W.C. should have been admitted in K.C.'s trial, and it was unreasonable for the district court to rule that such evidence was not similar enough to meet the standard under rule 403.

¶ 26   Second, the district court seemed to improperly suggest that because the previous child molestation evidence was "permissible solely for propensity purposes," this was a factor that weighed against its need. However, rule 404(c)(1) explicitly allows such evidence for the purpose of proving a defendant's "propensity to commit" the child molestation with which he is charged. *See State v. Lintzen*, 2015 UT App 68, ¶ 17, 347 P.3d 433 ("[A]fter [r]ule 404(c), the accused's propensity is the reason for admission . . . .") (internal quotation marks omitted); *State v. Jimenez*, 2013 UT App 76, ¶ 8, 299 P.3d 1158 ("[I]n child molestation cases such evidence may be admitted expressly for propensity under rule 404(c)."). So, even if the previous evidence shows only propensity and does not, to quote the district court,

---

information to the jury regarding Cuttler's use of force on J.C. and W.C.

"go directly to the elements of the crimes charged," this is not a factor that weighs against the evidence's admissibility under rule 403.

¶ 27 Third, the district court's application of the concern that "a jury, upon hearing evidence of a prior conviction for child sex abuse, might have the tendency to base their verdict on an improper and emotional basis" in the rule 404(c) context is mistaken. To give rule 404(c) purpose, evidence of the prior conviction by itself cannot be said to lead to unfair prejudice automatically. In fact, "[a]fter [r]ule 404(c), the accused's propensity is the reason for admission and no longer constitutes unfair prejudice." *Lintzen*, 2015 UT App 68, ¶ 17 (first alteration in original) (citation omitted). While child molestation convictions have evidence that is emotionally charged and that may have the potential to lead to unfair prejudice, the court can prevent this danger of unfair prejudice by limiting the details admitted about the previous conviction. A court may limit the evidence to that which shows the defendant's propensity for child molestation, rather than include unnecessary and emotionally charged details about the abuse, such as other accompanying physical abuse. In the present case, the district court may have properly excluded the evidence about Cuttler's violent acts in relation to the abuse he perpetrated on J.C. and W.C.[9] This would have given effect to rule 404(c) by allowing the State to bring evidence of prior child molestation acts to show Cuttler's propensity to molest K.C., while not presenting the jury with inflammatory details beyond what is necessary or appropriate for it to consider when drawing that propensity inference.

¶ 28 Finally, the district court expressed "great concern" over the twenty-seven-year time gap between the events occurring in 1984 and 1985 and the alleged abuse that took place in 2012. The district court believed that the time gap "present[ed] a strong argument against admitting the . . . evidence." However, this concern is unreasonable given the facts of Cuttler's abuse. Cuttler exhibited a propensity to abuse his daughters when they reached prepubescent age. After Cuttler pled guilty to the child sex abuse committed in 1984 and 1985, he spent nine years in prison. He fathered K.C. in 2005 and began abusing her in 2012 when she

---

[9] *See supra* ¶ 24 n.10.

was seven, only a year younger than W.C. when W.C. was abused. As the Florida Supreme Court correctly noted, "the opportunity to sexually batter young children in the familial setting often occurs only generationally and when the opportunity arises." *McLean v. State*, 934 So. 2d 1248, 1257 (Fla. 2006) (internal quotation marks omitted). Cuttler's opportunity to sexually abuse another prepubescent daughter did not arise until after K.C. had been born and aged a few years. As such, the significance of the twenty-seven-year time period between the incidents is greatly reduced in this case. Furthermore, the district court's reasoning would effectively preclude the State from ever introducing evidence regarding intergenerational abuse.

¶ 29 To demonstrate this point, we use an example of a grandfather charged with sexually molesting a granddaughter and who had previously sexually molested his daughters in the same manner when they were the same age as the granddaughter. The opportunity for the grandfather to perpetuate abuse in a similar familial relationship and age context would not arise until twenty or thirty years after his initial abuse of the daughters. If the prosecution were not allowed to bring in evidence of the prior abuse simply because of the long period of time between the incidents, then rule 404(c) would have no purpose in this all-too-frequent context.[10] We will not obstruct the prosecution from introducing such intergenerational abuse evidence on this basis.

¶ 30 In conclusion, the district court's misapplication of the above factors was unreasonable and we reverse.

## CONCLUSION

¶ 31 The district court's exclusive reliance on the *Shickles* factors represents an application of the wrong legal standard and thus is reversible error. The court's rigid application of the *Shickles* factors represents the same concern we had in *Lucero* over courts not heeding the actual language of rule 403. In addition, the district court's misapplication, in the context of rule 403, of (1) the similarities between the past sexual abuse that Cuttler inflicted on J.C. and W.C. and the current allegations of his sexual abuse of

---

[10] *See J.S. v. R.T.H.*, 714 A.2d 924, 933 (N.J. 1998) ("An especially disturbing finding about child sexual abuse is its strong intergenerational pattern . . . ." (citation omitted)).

K.C., (2) the use of the evidence given its propensity purpose, (3) the potential prejudice from the nature of the evidence, and (4) the time gap between the acts of abuse was unreasonable. Therefore, we reverse the district court's ruling and hold that the evidence of Cuttler's past child molestation conviction was admissible under rule 403.