2022 UT App 97

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JESUS AGUILAR JR.,
Appellant.

Opinion
No. 20190980-CA
Filed August 4, 2022

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 181900112

Herschel Bullen, Attorney for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN FORSTER
concurred.

POHLMAN, Judge:

¶1 Jesus Aguilar Jr. was charged with three counts of aggravated sexual abuse of a child. A jury found Aguilar guilty on two counts and acquitted him on the remaining count. He appeals, raising several claims of district court error and ineffective assistance of counsel and asking us to remand his case pursuant to rule 23B of the Utah Rules of Appellate Procedure. We affirm Aguilar's convictions and deny his rule 23B motion.

BACKGROUND[1]

¶2    Victoria,[2] the nine-year-old daughter of Aguilar's girlfriend, reported to a school counselor (Counselor) that Aguilar sexually abused her on three different occasions in the previous three years. First, Victoria alleged that Aguilar made her touch his penis under his boxers. Second, Victoria reported that Aguilar touched her buttocks under her clothing. And third, Victoria claimed that Aguilar made her touch his penis over his clothing.

¶3    Counselor reported the allegations to the Division of Child and Family Services, and shortly thereafter a detective (Detective) interviewed Victoria at the Children's Justice Center (CJC). Detective then interviewed Aguilar, who had waived his *Miranda* rights, and two weeks later, Detective interviewed Victoria again in response to a concern raised by Victoria's mother (Mother) that Victoria's account may have changed. After interviewing Victoria a second time, Detective found that her account did not substantially change.

¶4    Following those interviews, Aguilar was arrested and charged with three counts of aggravated sexual abuse of a child. After a preliminary hearing—during which Victoria's CJC interviews were introduced into evidence—Aguilar was bound over to stand trial on all three charges.

¶5    Before trial, the State filed a motion in limine seeking to preclude the defense from questioning Counselor about the termination of his employment at the school based on an

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Reigelsperger*, 2017 UT App 101, ¶ 2 n.1, 400 P.3d 1127 (cleaned up).

2. A pseudonym.

allegation that he had inappropriately touched another person—which termination was subsequently ruled unlawful. The State argued that the allegation against Counselor by another person was not relevant and, in any event, should be excluded under rule 403 of the Utah Rules of Evidence. After hearing argument, the district court agreed with the State and granted the motion.

¶6    The case proceeded to trial, and five witnesses testified during the State's case-in-chief: Victoria, Mother, Victoria's older brother, Counselor, and Detective. Aguilar's trial counsel cross-examined Counselor about, among other things, his lack of training in interviewing children, and counsel explored the potential that Victoria's allegations were the result of improper interview techniques.

¶7    During its deliberations, the jury sent a note to the judge, asking the court to clarify which of the three alleged incidents of sexual abuse corresponded to each of the three charged counts. Over defense counsel's objection, the court answered the question in a written instruction that quoted from the Information's description of each count and directed the jury to instructions that explained the State's burden to prove each count beyond a reasonable doubt. The jury subsequently convicted Aguilar on two counts of aggravated sexual abuse of a child (Counts 1 and 3) and acquitted him on a third (Count 2).

¶8    Prior to sentencing and after being appointed new counsel, Aguilar moved for a new trial, asserting that his trial counsel was constitutionally ineffective. After briefing and oral argument, the district court denied the motion, concluding that "trial counsel's performance was not deficient" and that, even if it had been, "[Aguilar] was not prejudiced."

¶9    Aguilar now appeals and asks us to consider claims of district court and attorney error, as well as a motion for remand under rule 23B of the Utah Rules of Appellate Procedure.

ANALYSIS

I. Motion for a New Trial

¶10 Aguilar first contends that the district court erred in denying his motion for a new trial. "Ordinarily, we review a court's ruling on a motion for a new trial for an abuse of discretion." *State v. Torres-Orellana*, 2021 UT App 74, ¶ 26, 493 P.3d 711, *cert. granted*, 502 P.3d 268 (Utah 2021). "But when a defendant moves for a new trial on ineffective assistance of counsel grounds," as Aguilar did here, "we apply the standard of review set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Torres-Orellana*, 2021 UT App 74, ¶ 26. Specifically, we review the district court's determinations on "both the performance and prejudice components of [*Strickland*'s] ineffectiveness inquiry"[3] for correctness as "mixed questions of law and fact." *Strickland*, 466 U.S. at 698; *see also State v. J.A.L.*, 2011 UT 27, ¶ 20, 262 P.3d 1 ("An ineffective assistance of counsel claim is a mixed question of law and fact. We review the trial court's application of the law to the facts under a correctness standard." (cleaned up)).

¶11 In seeking a new trial before the district court, Aguilar asserted that his trial counsel was constitutionally ineffective in several ways. Aguilar largely repeats those arguments on appeal, contending that he should have been granted a new trial because trial counsel failed to (1) move for a bill of particulars, (2) object to leading questions asked of Victoria, (3) object to the admission of certain statements in Aguilar's recorded interview with police,

---

3. To prove ineffective assistance of counsel, Aguilar must show that trial counsel's performance was deficient in that it "fell below an objective standard of reasonableness." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Aguilar must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694.

and (4) make an effective closing argument. Aguilar also argued in support of a new trial that the prosecutor committed misconduct in his closing argument by injecting his opinions relating to Victoria's veracity. Aguilar repeats a similar assertion on appeal, although he reframes it through an ineffective assistance of counsel lens.

¶12 Aguilar has not shown error by the district court. The district court considered each of these contentions after hearing oral argument on a fully briefed motion. In a well-reasoned, written ruling, the court addressed each argument, concluding that Aguilar's counsel was not deficient and, alternatively, that Aguilar was not prejudiced by counsel's performance. On appeal, Aguilar has not addressed the bases for the court's decision. And although we review the district court's decision for correctness, Aguilar "necessarily must challenge the district court's . . . conclusions of law, and he cannot make the same arguments anew while ignoring the proceedings below that adjudicated the same issues." *See State v. Newton*, 2018 UT App 194, ¶ 20, 437 P.3d 429, *aff'd*, 2020 UT 24, 466 P.3d 135. Because Aguilar has not addressed or even acknowledged the district court's decision on these issues, he has not met his burden of persuasion on appeal. *See id.*; *Bad Ass Coffee Co. of Hawaii Inc. v. Royal Aloha Int'l LLC*, 2020 UT App 122, ¶ 55, 473 P.3d 624 ("Appeals are not do-overs. They are opportunities to correct error. . . . And [appellants] cannot persuade us that the district court erred without addressing the district court's decision on its own terms." (cleaned up)).

## II. Motion in Limine

¶13 Aguilar next asserts that the district court erred in granting the State's motion in limine.[4] We "afford district courts a great

---

4. Aguilar includes this argument as part of his challenge to the district court's denial of his new trial motion. But the motion in

(continued…)

deal of discretion in determining whether to admit or exclude evidence and will not overturn an evidentiary ruling absent an abuse of discretion." *State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981 (cleaned up). We will discern an abuse of discretion where the court applies the wrong legal standard in assessing the admissibility of evidence or where the court's "decision to admit or exclude evidence is beyond the limits of reasonability." *Id.* (cleaned up). Further, we will not reverse an erroneous decision to exclude evidence unless the error is harmful. *See State v. Boyd*, 2001 UT 30, ¶ 40, 25 P.3d 985 ("Even should we find such error [in the exclusion of evidence], we will only reverse if . . . absent the error there is a reasonable likelihood of an outcome more favorable to the defendant." (cleaned up)).

¶14 Before trial, the State filed a motion in limine seeking to preclude questioning regarding the temporary termination of Counselor's employment after another person alleged that Counselor had "inappropriately touched them." Counselor's employment was terminated, but after an investigation and screening by the district attorney's office, Counselor was not charged and his employment was reinstated after a finding that he had been unlawfully discharged. The State challenged the relevance of the circumstances surrounding Counselor's termination and alternatively argued that the evidence should be excluded under rule 403 of the Utah Rules of Evidence. After hearing argument on the motion, the district court found that the evidence was not relevant under rule 401 of the Utah Rules of Evidence, rejecting Aguilar's argument that the evidence was probative of truthfulness, bias, or motive. The court also explained that "even assuming there is some sort of probative value of the evidence," "it should be excluded under [rule] 403" because

---

limine was argued and decided separately from the new trial motion. We therefore analyze it separately.

it could become "a mini-trial," "confuse the issues," "result in delay," and "wast[e] time."

¶15    Aguilar contends that the district court erred in granting the State's motion in limine. He argues that (1) Counselor's interview with Victoria "had the potential of tainting the story that [she] was telling," and thus Counselor's "background and his own sexual proclivities were of importance and highly relevant"; (2) the probative value of the evidence "far outweigh[ed]" the dangers of confusion or of wasting time; and (3) the court's alleged error was harmful. We disagree on all three counts.

¶16    First, Aguilar has not shown that the district court's "ruling on the relevancy of the excluded evidence was unreasonable." *See State v. Bernards*, 2007 UT App 238, ¶ 20, 166 P.3d 626. Evidence is relevant if it makes a fact of consequence "more or less probable than it would be without the evidence." Utah R. Evid. 401. But Aguilar does not explain how an allegation against Counselor created any bias or prejudice. "[B]ias is usually defined as an interest in the outcome of the case or a personal connection to the crime being prosecuted." *State v. Kan Ting Fung*, 907 P.2d 1192, 1195 (Utah Ct. App. 1995). Even if the allegation had been proven true, Aguilar has not shown how the allegation by another person—leveled after Counselor met with Victoria—would have caused him to have a personal interest in the outcome of this case.

¶17    Second, Aguilar has not shown that the district court abused its discretion in weighing the probative value of the evidence against the danger of confusing the issues or wasting time. No charges against Counselor were ever brought, and his employment at the school was ultimately reinstated following an investigation. Had Aguilar been allowed to ask Counselor about the allegations and his temporary termination, the State surely would have responded by introducing evidence that an investigation was conducted, that no charges were filed, and that Counselor's employment was reinstated after it was found that he

was unlawfully discharged. Thus, we agree with the State that "even if the evidence had some probative value, the danger of confusing the issues and needlessly wasting time substantially outweighed any probative value the evidence had." *See* Utah R. Evid. 403 (giving discretion to the district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other things, confusing the issues, undue delay, or wasting time).

¶18    Third, Aguilar's claim fails for the additional reason that the exclusion of the evidence was harmless. Even if the evidence of the allegation had been admitted, any effect it had on the jury would have been blunted by, among other things, the fact that no charges were filed against Counselor and his job was reinstated. Further, Counselor's testimony on direct was limited, and Aguilar has not shown that the jury would have been reasonably likely to disbelieve Victoria's own testimony about the abuse as the result of an unproven allegation against Counselor.

### III. Alleged Errors Relating to the District Court's Response to the Jury's Question

¶19    During deliberations, the jury asked the district court to clarify which of three alleged incidents of sexual abuse corresponded to each of the three charged counts. Over defense counsel's objection, the court responded with the following written instruction: "As alleged in and taken directly from the Information filed by the State: Count 1: 'To Wit: Hand/Penis contact first time,' Count 2: 'To Wit: Hand/Buttocks contact,' Count 3: 'To Wit: Hand/Penis contact over the clothes.'" The court also referred the jury to instructions 22 and 42[5] and reminded the jury that it had "been given all the evidence."

---

5. Instruction 22 advised the jury that Aguilar was presumed innocent and that it was the State's burden to prove Aguilar's

(continued…)

¶20　Aguilar contends that the district court committed error in responding to the jury's request for clarification.[6] Specifically, he argues that the court prejudiced him by improperly commenting on the evidence in violation of rule 19(f) of the Utah Rules of Criminal Procedure. Because Aguilar's challenge to the court's supplemental jury instruction presents a question of law, we review it for correctness. *See State v. Gollaher*, 2020 UT App 131, ¶ 20, 474 P.3d 1018. Relatedly, Aguilar argues that the court committed structural error based on his claim that in responding to the jury's question, the court spoke to the jury outside the presence of Aguilar and his counsel. This claim is unpreserved, but Aguilar appears to request that we review it under the rubric of plain error. We conclude that neither challenge has merit.

¶21　First, we discern no error in the supplemental instruction given in response to the jury's question. Rule 19(f) of the Utah Rules of Criminal Procedure states that "[t]he court shall not comment on the evidence in the case, and if the court refers to any of the evidence, it shall instruct the jury that they are the exclusive judges of all questions of fact." But the court did not mention any evidence—much less comment on it—in response to the jury's inquiry. Rather, the court merely repeated the State's limited description of the three instances of alleged abuse, exactly as it was set forth in the Information, and it identified which of those instances aligned with each of the enumerated counts.[7] Such a

---

guilt beyond a reasonable doubt. Instruction 42 advised the jury to consider each charge separately.

6. Although Aguilar includes this contention in the section of his brief challenging the denial of his new trial motion, we address it separately because the issue was not raised in that motion.

7. The court had previously instructed the jury that the Information was "not evidence of anything" and that it was "only a method of accusing a defendant of a crime."

limited instruction does not run afoul of rule 19(f). *See, e.g., State v. Salgado*, 2018 UT App 139, ¶ 38, 427 P.3d 1228 (explaining that a jury instruction may amount to an improper comment on the evidence where the court emphasizes certain evidence, comments on the weight of the evidence, or comments on the merits of the case in a way that indicates a preference toward one party); *State v. Maama*, 2015 UT App 235, ¶¶ 20–21, 359 P.3d 1272 (explaining that rule 19(f) forbids a judge from telling the jury what the evidence is and from opining on the credibility of evidence or on disputed issues of fact).

¶22 Second, Aguilar argues that in providing the supplemental instruction, the court "apparently spoke" to the jury without Aguilar and his counsel present. As we understand it, Aguilar contends that because the record does not expressly state how the supplemental jury instruction was given to the jury, the substance of the instruction might have been verbally delivered to the jury without him there. Aguilar asserts that such contact would constitute structural error and this court would be "obliged to reverse." We disagree for two reasons.

¶23 To begin, the premise of Aguilar's argument is unfounded. The transcript of the court's exchange with counsel reflects that the court typed the supplemental instruction in response to the jury question, the typewritten instruction is found in the record, and the minutes state that the court "is answering [the] jury question . . . as stated on the record." There is nothing in the record to suggest that the jury was not instructed through the typewritten instruction, and Aguilar's claim that the court spoke to the jury outside his presence is mere speculation. Because we must presume the regularity of the court's proceedings in the absence of contrary evidence, Aguilar cannot establish error. *See State v. Hummel*, 2017 UT 19, ¶ 82, 393 P.3d 314 ("Uncertainty . . . is not a basis for reversal. Uncertainty counts against the appellant, who bears the burden of proof on appeal, and must overcome a presumption of regularity as to the record and

decision in the trial court. Thus, a lack of certainty in the record does not lead to a reversal and new trial; it leads to an affirmance on the ground that the appellant cannot carry his burden of proof." (cleaned up)).

¶24 Further, even assuming Aguilar could establish that the court verbally delivered the supplemental instruction to the jury outside his presence, and that such a communication constitutes a structural error, Aguilar has not engaged in the necessary analysis to prove his claim. Contrary to his suggestion, a claim of structural error requires a showing of prejudice if asserted through the framework of plain error. *See State v. Bond*, 2015 UT 88, ¶ 42, 361 P.3d 104; *State v. Sagal*, 2019 UT App 95, ¶¶ 24–25 & n.3, 444 P.3d 572. In other words, Aguilar still bears the burden to show that "absent the error, there is a reasonable likelihood of a more favorable outcome for [him]." *See Bond*, 2015 UT 88, ¶ 49 (cleaned up). Aguilar has not made this showing. He has not suggested that it is reasonably likely the result of this case would have been different had the court not verbally instructed the jury (again, even assuming it did). Accordingly, his claim fails.

## IV. Alleged Ineffective Assistance of Counsel

¶25 Aguilar raises two claims of ineffective assistance of counsel relating to evidence elicited during Detective's direct examination at trial. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344 (cleaned up). To succeed, Aguilar must show both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Aguilar has not met his burden on either claim.

¶26 First, Aguilar contends that his trial counsel was constitutionally ineffective for not objecting to testimony elicited from Detective regarding her CJC interviews of Victoria. Referring to two separate CJC interviews conducted two weeks apart, the State asked Detective if "there [was] anything from that

first interview to that second interview that changed substantially?" Detective responded, "No." Aguilar argues that trial counsel "should have objected to the question, which was leading, and requested [Detective's] testimony [be] stricken and the jury admonished to disregard her response." Aguilar further argues that Detective testified as an expert in violation of rule 702 of the Utah Rules of Evidence and improperly testified as to Victoria's "mental state" in violation of rule 704(b).

¶27 This claim fails on the deficient performance prong because other than reciting the rules, Aguilar has not engaged in any analysis to show that the question was leading, that the answer constituted "[s]cientific, technical, or other specialized knowledge" that would invite the application of rule 702, *see* Utah R. Evid. 702(b), or that the testimony violated rule 704(b), which applies to opinions about criminal defendants, *see id.* R. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."). Without this analysis, Aguilar cannot demonstrate that it was objectively unreasonable for counsel not to object on the bases he identifies. *See State v. Makaya*, 2020 UT App 152, ¶ 9, 476 P.3d 1025 ("[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." (cleaned up)).

¶28 Second, during Detective's direct examination, the State played portions of her interview of Aguilar. In one exchange, Detective stated, "[W]hile you're in there, you'll probably just be served at the jail," referring to a protective order that Aguilar's family was going to obtain. Aguilar responded, "Okay," and Detective said, "Violated." Aguilar argues that trial counsel performed ineffectively by not objecting to the evidence, claiming that the reference to "violated" would have suggested to the jury that Aguilar "had a prior federal conviction, and probably for a sex related crime." We disagree.

¶29 Counsel could reasonably decide that a jury would not understand Detective to be referring to a prior conviction for a sex crime or, at the very least, that the passing remark was vague enough that it did not warrant an objection that would draw additional attention to the issue. Thus, because trial counsel's actions could constitute reasonable trial strategy, Aguilar cannot show deficient performance.[8] *See State v. Harper*, 2006 UT App 178, ¶¶ 23–25, 136 P.3d 1261 (rejecting an ineffective assistance of counsel claim on the deficient performance prong because "counsel may reasonably have believed it ill-advised to call undue attention to the unanticipated testimony").

## V. Cumulative Error

¶30 Aguilar requests that we reverse his convictions under the cumulative error doctrine. Under that doctrine, we will reverse "only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 39, 428 P.3d 1038 (cleaned up). Because there are no

---

8. In his motion for a new trial, Aguilar asserted that his trial counsel was ineffective for not objecting to three other statements from Aguilar's interview that played during Detective's direct examination. *See supra* ¶ 11. To the extent Aguilar now argues that counsel was ineffective for not including the "violated" remark in the motion for a new trial, Aguilar has not shown that it is reasonably likely that the district court would have granted a new trial had the additional remark been included. The court previously determined that counsel acted reasonably in choosing not to "call undue attention" to the "brief statements," and that no reasonable juror would conclude that Aguilar had a prior sex conviction based on the passing remarks. Aguilar has not suggested any basis on which we could conclude that the addition of the "violated" remark would have altered the court's conclusion.

errors to accumulate in this case, the doctrine does not apply. *See State v. Gonzales*, 2005 UT 72, ¶ 74, 125 P.3d 878.

## VI. Motion for Rule 23B Remand

¶31 Pursuant to rule 23B of the Utah Rules of Appellate Procedure, Aguilar asks us to remand his case to the district court to supplement the record with facts that he contends support additional ineffective assistance of counsel claims. "Rule 23B allows this court to remand a criminal case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel." *State v. Powell*, 2020 UT App 63, ¶ 11, 463 P.3d 705 (cleaned up). This court will grant a rule 23B motion to remand "only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *See* Utah R. App. P. 23B(a). If Aguilar cannot "meet the test for ineffective assistance of counsel, even if his new factual allegations were true, there is no reason to remand the case, and we should deny the motion." *See State v. Griffin*, 2015 UT 18, ¶ 20, 441 P.3d 1166. Because we conclude that Aguilar has not satisfied this standard, we deny his motion.

### A. Jury Voir Dire

¶32 Aguilar first asserts that his trial counsel was "ineffective for failing to voir dire the prospective jurors for possible racial bias and to move to strike the jury panel as not being a fair cross-section of the community."[9] He seeks a remand to permit the district court to determine whether there was "a violation of the jury selection act" and "to ferret out the emotional bent of the jury toward persons of another race and color." Although we are sensitive to Aguilar's generalized concerns about systemic racism,

___

9. Aguilar raised this issue in his principal brief but ultimately agreed that it was dependent on facts not in the record and should be considered as part of his rule 23B motion.

Aguilar has not demonstrated that remand under rule 23B is warranted.

¶33    First, regarding his claim that counsel was ineffective for not questioning the prospective jurors regarding potential racial bias, our supreme court has held that when a defendant claims attorney ineffectiveness for not investigating potentially biased jurors, prejudice under *Strickland* will not be presumed. *State v. King*, 2008 UT 54, ¶ 13, 190 P.3d 1283. Instead, for Aguilar to prevail on his claim that counsel was deficient, he must demonstrate actual prejudice, which, in this context, requires a showing of "actual juror bias." *See id.* ¶ 39. And while a remand under rule 23B may be, in some circumstances, an appropriate tool for establishing actual bias, *see id.* ¶ 43, Aguilar's allegations fall short.

¶34    In *King*, the supreme court (on the State's suggestion) remanded the case for posttrial voir dire because two of the jurors had articulated a concrete basis for potential bias. *Id.* ¶¶ 19, 40. They had each stated that they, a family member, or a close friend had been the victim of abuse, but without follow-up questioning to test whether they could impartially decide allegations of abuse, they were seated as jurors. *Id.* ¶¶ 7–8. In contrast, Aguilar's allegations are rooted entirely in speculation. His claims of bias are based on his generalized complaints about systemic racism; he has not alleged any facts beyond skin color to support his belief that the jurors were biased against him. Under rule 23B, this is insufficient. *See Griffin*, 2015 UT 18, ¶ 19 (indicating that remand under rule 23B should be denied where allegations "have little basis in articulable facts but instead rest on generalized assertions").

¶35    Second, Aguilar's claim that his trial counsel was ineffective for not moving to strike the panel on the basis that the jury venire did not represent a fair cross-section of the community likewise fails. Aguilar concedes that "he cannot demonstrate that

the [alleged] underrepresentation [of Latinos] was due to systematic exclusion of the group in the jury-selection process." (Cleaned up.) Yet he contends that his counsel acted unreasonably in not moving to strike the panel on that basis. But simply because counsel could have made such a motion does not mean that it was deficient performance not to. Aguilar has not engaged with the relevant law and has not shown that there was a sound legal basis for trial counsel to move to strike the panel, nor has he shown that it is reasonably likely that the district court would have granted such a motion if one had been made.

B.     Defense Investigation and Uncalled Witness

¶36    Aguilar next asserts that trial counsel performed deficiently by not calling Aguilar's sister (Sister) to testify and by not investigating Mother. Regarding Sister, Aguilar argues that because she lived with Aguilar and Victoria "for a significant period of time," she could have testified about the "interactions of the personalities in the home" and the various sleeping arrangements, including Aguilar's adamance that Victoria not sleep in the bed he shared with Mother. And as to Mother, Aguilar argues that it was ineffective not to interview Mother about her reported concern that Victoria was changing her story. On these bases, Aguilar seeks remand to allow Sister's testimony to be put in the record and to "[u]nearth[]" what Victoria said to Mother. Aguilar's request does not satisfy rule 23B.

¶37    First, we agree with the State that it was not objectively unreasonable for counsel to conclude that Sister had little to add. Even assuming she could have testified of her familiarity with Victoria and Aguilar's interactions, she could not testify that Aguilar never had opportunities to abuse Victoria. Similarly, it was not unreasonable for counsel to conclude that Sister's knowledge of different sleeping arrangements or Aguilar's insistence that Victoria not sleep in his bed would do little to

undermine Victoria's claims.[10] *See State v. Boyer*, 2020 UT App 23, ¶ 62, 460 P.3d 569 ("There are countless ways to provide effective assistance in any given case and . . . even the best criminal defense attorneys would not defend a particular client in the same way." (cleaned up)).

¶38 Second, Aguilar contends that because his counsel did not interview Mother, counsel could not cross-examine Victoria on the perceived change. But it is Aguilar's burden to produce nonspeculative allegations of fact "that will demonstrate both deficient performance and prejudice." *State v. Gallegos*, 2020 UT 19, ¶¶ 39–40, 463 P.3d 641. Without a nonspeculative allegation of what Mother would have said, Aguilar cannot demonstrate that it is reasonably likely the jury would have reached a different result had counsel interviewed Mother and further cross-examined Victoria.[11] *See State v. Cecala*, 2021 UT App 141, ¶ 42, 502 P.3d 790 (rejecting a request for remand under rule 23B because the defendant did not establish that a witness, if called, would have provided testimony favorable to the defense); *cf. Gallegos*, 2020 UT 19, ¶ 40 ("Rule 23B is not an invitation to fish for facts.").

C.     Impeachment of Counselor

¶39 Aguilar makes two related arguments in support of his complaints about his trial counsel's handling of Counselor. Aguilar first contends that counsel was "ineffective in failing to

---

10. In support of the two counts on which Aguilar was convicted, Victoria testified that Aguilar told her to come in the room and get on the bed with him. In neither instance did Victoria claim that the abuse occurred when they had been sleeping together in the bed.

11. Aguilar also has not proffered evidence that Mother would have been willing to meet with trial counsel if counsel had requested an interview.

fully impeach" Counselor "with respect to interviewing children of tender age." This argument fails because the facts on which this argument is based are already in the record. *See Griffin*, 2015 UT 18, ¶ 18 ("[R]emand is not appropriate where the alleged facts are already in the record."). In fact, Aguilar acknowledges that his counsel "had all of th[e] information" demonstrating that Counselor was unqualified to interview children about sexual abuse. Thus, Aguilar's real complaint is that counsel did not put the information to better use, an argument that should have been made, if at all, in his principal brief.[12] *Cf. id.*

¶40      Second, Aguilar argues that counsel performed deficiently in arguing the motion in limine when counsel did not inform the court that Counselor previously entered a plea of guilty in abeyance to one count of disorderly conduct years before Victoria reported Aguilar's abuse. Aguilar asserts that had this additional information been provided, the court could have "more clearly see[n]" how the allegation that Counselor inappropriately touched another person reflected "on his character for truthfulness and bias." Aguilar, however, has not identified a legal basis for the evidence's admission, nor has he engaged in the necessary analysis to demonstrate a reasonable likelihood that the court would have denied the motion in limine had the court been aware of the plea. *See Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248 ("A party may not simply point toward a pile of sand and expect the court to build a castle. In both district and appellate courts, the development of an argument is a party's responsibility,

---

12. Even if Aguilar had included this argument in his principal brief, it likely would have been difficult to establish ineffective assistance of counsel. After all, his counsel highlighted Counselor's lack of training in interviewing children and explored the potential that Victoria's allegations were the result of improper interview techniques.

not a judicial duty.”). Thus, Aguilar has not demonstrated that remand is warranted.

D.      Cross-Examination of Victoria and Mother

¶41    Aguilar seeks remand to demonstrate alleged deficiencies in trial counsel’s cross-examination of Victoria and Mother. Specifically, he complains that counsel did not cross-examine Victoria “about the reasons she may” want Aguilar “out of her life” or about whether she was experiencing “difficulty” after the abuse. He also contends that counsel should have cross-examined Mother about an alleged motive to “get rid of” Aguilar and to expose Mother’s purported “vindictive[ness].” We reject these arguments as a basis for remand for two reasons. First, regarding Victoria, Aguilar does not aver that he shared with his counsel his suspicions about reasons Victoria may have had to want Aguilar out of her life or her post-abuse conduct. Thus, counsel may not have asked about Aguilar’s suspicions because counsel was unaware of them. *See State v. Biebinger*, 2018 UT App 123, ¶ 17, 428 P.3d 36 (“An attorney cannot be charged with providing ineffective assistance for failing to bring a competency petition based on facts he does not know and has no reason to know.”).

¶42    Second, regarding both witnesses, Aguilar again has not demonstrated that it was objectively unreasonable for counsel to adopt a defense strategy that did not include accusing Mother of encouraging Victoria to fabricate allegations against Aguilar to “get rid of” him. Counsel instead adopted a strategy that painted Aguilar in a good light. Further, rather than paint Victoria and Mother as untruthful, counsel instead chose to highlight the problems with Counselor’s interview and his lack of training and to suggest that confusion, not resentment or any vindictiveness, fueled Victoria’s allegations. Because Aguilar has not shown that counsel’s choices were objectively unreasonable, he is not entitled to remand. *See Griffin*, 2015 UT 18, ¶ 20.

E.      Expert Testimony About Victoria's Behavior

¶43     Aguilar last asserts that trial counsel's performance "fell below the prevailing standard of professional norms" because counsel "refused to confer with or call an expert" to address the theory that "if [Victoria] were really abused sexually, she would be suffering emotionally and would show signs of the trauma." This argument fails because Aguilar has not provided nonspeculative allegations about who would have testified on Aguilar's behalf and what the expert's testimony would have been. *See State v. Curtis*, 2013 UT App 287, ¶ 20, 317 P.3d 968 (rejecting remand under rule 23B because the defendant failed to identify the uncalled witnesses and "specific facets of their testimony that might have helped the case" (cleaned up)). Thus, remand on this basis is unwarranted. *See* Utah R. App. P. 23B(a).


CONCLUSION

¶44     Aguilar has not demonstrated that the district court committed reversible error in denying his motion for a new trial, in granting the State's pretrial motion in limine, or in providing the jury with a supplemental jury instruction in response to the jury's inquiry. Aguilar also has not shown that his trial counsel was constitutionally ineffective or that remand under rule 23B of the Utah Rules of Appellate Procedure is appropriate on any one of his several ineffective assistance of counsel claims. We therefore decline to order remand for additional factfinding and affirm his convictions.

_____